*611 OPINION OF THE COURT
Edward M. Horey, J.
The motion is to dismiss an affirmative defense raised in the answer of the defendants. It is brought pursuant to CPLR 3211 (subd [b]).
The facts involved are simple. The plaintiff, Marlene Himes, was a resident of Pennsylvania. On June 24, 1978, she was seriously injured in an automobile accident that occurred in the State of New York while she was en route to her house in Pennsylvania. At the time, the plaintiff was driving a vehicle registered and insured in Pennsylvania. The vehicle, which struck the plaintiff was also registered and insured in Pennsylvania. It was being operated in New York by the defendant, Harry L. Stalker, Jr., a resident of Pennsylvania. The vehicle was owned by the defendants, Harry L. Stalker, Sr., and Marilyn Stalker, residents of Pennsylvania, and father and mother respectively of the defendant, Harry L. Stalker, Jr. Consent of the owner defendants to the operation of their vehicle in New York is conceded. That the operation was on the business of the owners is denied.
The motion presents a true conflict-of-laws problem. It presents a choice-of-law problem in the area of tort liability. The resolution of the problem presented is cast in doubt. Such doubt here, as in many other cases in the subject area of the law, has three sources. First, was the rejection by the Court of Appeals of the long-established and fixed rule of choice of law, to wit: that in the area of torts the law of the place of the wrong, lex loci delicti was the law to be applied. The rejection of the traditional rule was made in Babcock v Jackson (12 NY2d 473).
Secondly, doubt flows from the later announcement by our Court of Appeals of three new fixed rules of choice of law to be applied in the area of tort liability in a conflict-of-law situation. The new rules were first announced, and detailed in the concurring opinion of Judge Fuld, in Tooker v Lopez (24 NY2d 569). The same three new rules were later confirmed by the majority of the Court of Appeals in Neumeier v Kuehner (31 NY2d 121).
Thirdly, doubt springs from the rationale of those decisions made by the Court of Appeals between the date of rejection of the lex loci delicti rule in Babcock v Jackson (supra) in 1963 and the unequivocal adoption of new rules in 1972 in the Neumeier v Kuehner decision (supra).
*612 In charting a course to decision, it is important to note that the initial determination rejecting the established rule that the law of the place of the accident controlled in tort-conflict situations was made by the Court of Appeals in a case involving the application of a foreign guest statute. In that decision, Babcock v Jackson (supra), the court held that a New York resident, who was a passenger in a car owned and operated by New Yorkers, should not be denied recovery in New York for injuries sustained while on a weekend auto trip in Canada. The court refused to apply an Ontario provincial guest statute, which provided to the defendant driver, total immunity from liability for injuries suffered by a guest passenger.
In holding that New York law permitting recovery governed the right of the plaintiff passenger, Judge Fuld, speaking for the majority of five, explained why the lex loci delicti rule should not be applied. He reasoned that such rule ignored "the interest which jurisdictions other than that where the tort occurred may have in the resolution of particular issues.” (Babcock v Jackson, 12 NY2d 473, 478, supra.) Reasons for the application of New York law rather than Ontario law were cited. "Justice, fairness and 'the best practical result’” required that "controlling effect” be given "the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation.” (Babcock v Jackson, supra, p 481.) The State of "greatest concern” was to be determined by analyzing the policies underlying the differing rules of the involved jurisdictions. (Babcock v Jackson, supra, p 481.) The rule of that jurisdiction, whose policies' would be most furthered was to be the applicable rule. It was determined that the New York rule providing for recovery to the passenger would be most furthered. Thus, it would be applied to the exclusion of the contradictory Ontario rule denying recovery.
A second and different reason in support of the decision was made, to wit: "Although the rightness or wrongness of defendant’s conduct may depend upon the law of the particular jurisdiction through which the automobile passes, the rights and liabilities of the parties which stem from their guest-host relationship should remain constant and not vary and shift as the automobile proceeds from place to place.” (Babcock v Jackson, supra, p 483.) Because New York was "the place where the parties resided, where their guest-host relationship *613 arose and where the trip began and was to end”, it was determined that New York law would apply. (Babcock v Jackson, supra, p 483.)
Following the decision in Babcock v Jackson (supra) in 1963, and continuing until 1969, several cases involving conflict of laws in the area of tort and concerning the choice of law to be applied were determined by the Court of Appeals. No clear pattern emerged. It appeared that each case was decided on an ad hoc basis. In some, emphasis seemed to be placed on the analysis of interest of the involved jurisdictions in the conflicting statutes. In others, the factual "contacts” with the differing jurisdictions was summarized and stressed in reaching a determination. As a consequence, seemingly inconsistent decisions resulted. (Cf., e.g., Dym v Gordon, 16 NY2d 120; Macey v Rozbicki, 18 NY2d 289.)
In 1969, Tooker v Lopez (24 NY2d 569, supra) was decided by the Court of Appeals. All major decisions by the court after Babcock v Jackson (12 NY2d 473, supra) were reviewed in the opinion for the majority of the court, written by Judge Keating, in the separate concurring opinions of Chief Judge Fuld and Judge Burke, and the dissenting opinion written by Judge Breitel and joined in by Judges Scileppi and Jasen.
The fact situation presented in Tooker v Lopez (supra) was that a New York domiciliary was killed in Michigan while riding as a passenger in an automobile driven by a New York domiciliary and registered and insured in New York. The decision was that a Michigan "guest statute” requiring a showing of willful misconduct or gross negligence on the part of the driver was held inapplicable. Contrary, New York statutory law was held applicable.
For the purpose of determining the motion at bar, two items of significance are stressed in the decision in Tooker v Lopez (supra).
First, the decision of the court, as evidenced in the majority opinion, was that it was predicated on the "interest analysis approach”: "If the facts are examined in light of the policy considerations which underlie the ostensibly conflicting laws it is clear that New York has the only real interest in whether recovery should be granted and that the application of Michigan law 'would defeat a legitimate interest of the forum State without serving a legitimate interest of any other State’ ”. (Tooker v Lopez, 24 NY2d 569, 576, supra.)
Secondly, the concurring opinion of Chief Judge Fuld in *614 Tooker v Lopez (supra) set forth for the first time three new rules for application where there exists a conflict of laws in the area of tort liability. Stating that the decisions which had followed after Babcock v Jackson (12 NY2d 473, supra) had helped to uncover the underlying values and policies operative in the subject area of the law, Chief Judge Fuld said that the court could now proceed to the next state in the evolution of the law, viz: "the formulation of a few rules of general applicability, promising a fair level of predictability.” (Tooker v Lopez, supra, p 584.) The three rules which were then set forth were preceded by the following significant statement, to wit: "Without attempting too much, I believe that we may accept the following principles as sound for situations involving guest statutes in conflicts settings” (Tooker v Lopez, supra, p 585; italics added).
Having progressed to the Tooker v Lopez decision (supra) made in 1969, it is necessary to pause in our analysis of the developing decisions of the Court of Appeals and consider two decisions relevant to the motion at hand which were made respectively by the Appellate Division, Third Department, and the Appellate Division, Fourth Department.
In December, 1970, the Third Department, Appellate Division, was presented with a fact situation wherein an Ontario guest was injured by the negligence of his Ontario host who was driving an automobile garaged, licensed and insured in Canada. The accident in question occurred in the State of New York. The issue presented was whether the Ontario guest statute denying suit by the passenger should be applied or whether alternatively the New York statute permitting action by the passenger should be applied. (Arbuthnot v Allbright, 35 AD2d 315.)
Referring to the recent decision of the Court of Appeals in Tooker v Lopez (24 NY2d 569, supra), the Appellate Division, Third Department, in an opinion by Justice Herlihy noted the new rules set forth by Chief Judge Fuld in his concurring opinion in Tooker v Lopez (supra). The first of those rules therein cited was as follows: " 'When the guest-passenger and the host-driver are domiciled in the same state, and the car is there registered, the law of that state should control and determine the standard of care which the host owes to his guest’ ” (Arbuthnot v Allbright, supra, p 316). On the basis of the quoted rule contained in the concurring opinion of Chief Judge Fuld, and no other basis, the Third Department deter *615 mined that the Ontario statute was applicable and the plaintiff was not entitled to the benefits of the New York law. (Arbuthnot v Allbright, 35 AD2d 315, supra.)
Two years later, in June, 1972, the Appellate Division, Fourth Department, was presented with a fact pattern indistinguishable from that in Arbuthnot v Allbright (supra). Again, a Canadian guest while a passenger of a Canadian host in an automobile registered, garaged and insured in Canada, was injured in an accident that occurred in the State of New York.
In this action (Bray v Cox, 39 AD2d 299) the Appellate Division, Fourth Department, in an opinion by Card amone, J., held that the Ontario guest statute denying recovery was not applicable, and the contrary New York statute was applicable and the plaintiff was thus entitled to the recovery benefits provided under the New York law. The opinion of the court conceded frankly that the determination was contrary to the decision reached by the Third Department in Arbuthnot v Allbright (supra). (See Bray v Cox, 39 AD2d 299, 302, supra.)
As will be seen, the rationale leading to the decisions of the Fourth Department in Bray v Cox (supra), is as important to the motion at bar as is the decision. Just as the Third Department in Arbuthnot v Allbright (supra) had cited Tooker v Lopez (24 NY2d 569, supra) as sustaining its position, so also did the Fourth Department in Bray v Cox (supra) cite it as authority for its contrary determination. In Bray v Cox (supra), Tooker v Lopez (supra) was cited for the posited statement that "[c]hoice-of-law cases are resolved by an interest analysis approach”. (Bray v Cox, 39 AD2d, at p 300.) In Arbuthnot v Allbright (35 AD2d 315, supra), Tooker v Lopez (supra) was cited as authority for the application of the three new rules announced by Chief Judge Fuld in his concurring opinion in Tooker v Lopez (supra).
Significantly, no reference was made either in the opinion of Justice Cardamone in Bray v Cox (39 AD2d 299, supra) to the concurring opinion of Chief Judge Fuld in Tooker v Lopez (supra), nor to the three rules which were set forth in his concurring opinion. Neither was reference made to the fact that the basis of the concededly contrary decision of the Appellate Division, Third Department, in Arbuthnot v Allbright (supra) was the first rule laid down by Chief Judge Fuld in his concurring opinion in Tooker v Lopez (supra).
Neither Bray v Cox (supra), decided in the Fourth Depart *616 ment, nor Arbuthnot v Allbright (supra), decided in the Third Department, was ever reviewed by the Court of Appeals. An appeal by permission to that court in Bray v Cox (supra) was dismissed for want of prosecution. (Bray v Cox, 38 NY2d 350.) As of June 29, 1972, concededly contrary decisions relevant to the motion for decision existed in the Third and Fourth Departments.
Eight days after the June 29, 1972 decision of the Fourth Department in Bray v Cox (supra), to wit: on July 7, 1972, the Court of Appeals handed down its decision in Neumeier v Kuehner (31 NY2d 121, supra). This case involved the question of application or nonapplication of an Ontario guest statute.
The history of the Neumeier (supra) action is this: In a motion in Special Term, Erie County, the Trial Justice had determined the foreign guest statute was applicable and properly interposed as an affirmative defense.
Upon appeal to the Appellate Division, Fourth Department, in an opinion by Justice Cardamone, the trial court was reversed upon the appellate determination that the Ontario guest statute was not applicable and did not constitute an appropriate defense. (Neumeier v Kuehner, 31 AD2d 121, supra.)
Upon subsequent appeal to the Court of Appeals, the decision of the Appellate Division, Fourth Department, was, in turn, reversed. The Canadian guest statute was held to be applicable and properly interposed by the defendant as an affirmative defense. (Neumeier v Kuehner, supra.)
It is axiomatic to note that this court is bound by a determination of its Appellate Division (Fourth Department) unless such appellate determination has been overruled by the Court of Appeals. In such instance the decision of that court is binding. This court is not only willing, but anxious to follow the noted rule. However, the task here is not easy. There has been so much judicial trampling in this field of tort law since the decision of Babcock v Jackson (12 NY2d 473, supra) that it is difficult to distinguish from the remnants what are viable roots and what are wasted weeds. In particular, it is difficult, if not impossible, to accurately assess the effect which the decision in Neumeier v Kuehner (supra) by our Court of Appeals has had on the decision of Bray v Cox (39 AD2d 299, supra) made by the Appellate Division, Fourth Department. *617 Difficult or not, such is the task which is presented by the instant motion.
Recourse to law reviews and periodicals in this conflict of laws area offers little assistance. There is a text book, R. Crampton, D. Currie & H. Kay, Conflict of Laws (2d ed, vol 7). There are a myriad of articles. I have reviewed the following: Sedler, Rules of Choice of Law versus Choice-of-Law Rules: Judicial Method in Conflicts Tort Cases (44 Tenn L Rev, 977);. Sedler, The Governmental Interest Approach to Choice of Law: An Analysis and a Reformation (25 UCLA L Rev, 181); Juenger, Choice of Law in Interstate Torts (118 U of Pa L Rev, 202); Reese, Chief Judge Fuld and Choice of Law (71 Col L Rev, 548).
Of the opinions of the experts, whether actual or self-styled, one thing can be truly and safely said — they disagree. One urges an individual ad hoc case approach to a tort conflict problem. Another is convinced that only the "interest analysis” concept is proper. Some say, with merit, the analysis of interest of the differing jurisdictions is all right, but to employ it one must determine upon the purpose to be served by the competing jurisdictional statutes. How, it is asked, is a New York trial court to determine the policy or "raison d’etre” of a foreign statute? Incidentally, that is a good question. For example, how is one to subpoena the Prime Minister of Canada, or a knowledgeable Ontario Legislator into a New York court to give evidence on the issue? And, is it realistic to believe that any one will admit, under oath, that just plain old political patronage may have been one, or the sole motivation that lead to the involved legislative enactment. No, forget interest analysis and factual contacts, and adopt a series of narrower rules in the place and stead of the old broad rule of lex loci delicti. Therein lies the solution says another expert.
While the legal academicians continue to enjoy a bacchanalian revelry of law review delights and the appellate courts, attempt to soothsay whether the, majority, or the concurring, or the dissenting opinions of the last Court of Appeals determination should be followed, and the trial courts wallow in the legal quagmire and seek to divine an initial decision that hopefully will pass muster with its respective Appellate Division and if not will merit approval of the Court of Appeals, the unfortunate litigant involved in the tort conflict problem pays for appeal upon appeal. In all of the decisions and material reviewed, and it has been considerable, there is one *618 void that this court is constrained to note, viz: the absence of a suggestion that conflicting statutes of tort liability might better be resolved by legislative action than judicial intervention. Resolution by interstate compact and international treaty could be more complete and certainly no less time consuming than the case-by-case, statute-by-statute, fact situation-by-fact situation solution now in progress.
The foreign law here involved is that of Pennsylvania. It is alleged and admitted that under the law "of that Commonwealth if a vehicle is not operated, at the time of the accident, on behalf of the owner and in furtherance of the owner’s business, or that of the family, no vicarious liability may be imposed upon the owner by dint of the negligent operation of the vehicle even if permission to use the vehicle was given by the owner to the operator. (Riquet v Wazelle, 288 Pa 463; Markel v Perot, 273 Pa 4.)
If the cited law of Pennsylvania is applicable, plaintiffs action against the nonresident owners must be dismissed, and the action continue in New York only against the defendant operator.
In the opinion of the court, those three rules postulated first by Chief Judge Fuld in his concurring opinion in Tooker v Lopez (24 NY2d 569, supra) and subsequently affirmed and announced by the majority of the Court of Appeals in Neumeier v Kuehner (31 NY2d 121, supra), are now binding on this court as well as all appellate courts of this State.
However, in the opinion of the court, and it is conceded that it is opinion only, the three rules postulated in Neumeier v Kuehner (supra) are binding only in the instance that a foreign guest statute is involved. They were labeled as principles "proposed as sound for situations involving guest statutes in conñict settings” (italics added). (Neumeier v Kuehner, 31 NY2d, at p 128.) If the announced rules were to have application beyond the guest statute situations, the Court of Appeals did not say so. Certainly the opportunity to do so was presented and the need for predictability and uniformity was recognized. Yet the promulgation of rules by the Court of Appeals was limited to fact patterns in guest statute situations only.
What is the present law of New York in tort conflict settings, other than in the guest statute situations? This court concedes uncertainty. In truth, there may not be one general rule applicable to all situations other than those presented by *619 guest statutes. It is possible that new principles will be formulated for other particular areas of tort conflict after the passage of time, when, as in the guest statute situations, "values and policies have been revealed” by a series of cases presented for decision. (Tooker v Lopez, supra, p 584.)
As of this writing, it is the opinion of the court, that in the area of tort-conflicts, other than those involving guest statutes, the rule of lex loci delicti is to be the rule applied in the vast majority of cases. Whether it is argued that this represents a return to an old established rule, or alternatively, that there never was any general departure from it, merely a temporary detour providing an exception in guest statute situations is of no great consequence.
Two Federal court decisions decided after Neumeier v Kuehner (supra) in other than guest statute situations applied the law of New York, but for reasons that are not crystal clear. In Rosenthal v Warren (475 F2d 438, 443) a divided Second Circuit held that the rules announced in Neumeier (supra) did not apply to limitations of foreign jurisdictions on wrongful death recovery because New York had a "strong * * * public policy” against limiting liability in that area. In the same case, a Federal district court held that the Neumeier (supra) rules did not apply to a foreign statute providing for immunity to a charity. The reason offered was that New York had an interest in allowing recovery for an injured New Yorker.
This court is of the opinion that the "grouping of contacts” test applied in Babcock v Jackson (12 NY2d 473, supra) has been discarded. Vestiges of the later developed rule of "governmental interests” appear to remain. In this court’s opinion it is this rule of "governmental interests” that will be seized upon to support any decision which conflicts with an application of the lex loci delicti rule that the Court of Appeals determines will produce an unjust result. Support for the views expressed can be found in the concurring opinion of Judge Breitel in Neumeier v Kuehner (31 NY2d, supra, pp 130-131) and in the most recently discovered decision by the Court of Appeals in Cousins v Instrument Flyers (44 NY2d 698, 699): "It is true that lex loci delicti remains the general rule in tort cases to be displaced only in extraordinary circumstances”.
What the Court of Appeals will determine to be "extraordinary circumstances” is not clear. In Neumeier v Kuehner (31 NY2d 121, 128-129, supra) the majority of the court said: "The *620 law to be applied is that of the jurisdiction where the accident happened unless it appears that 'displacing [the] normally applicable rule will advance the relevant substantive law purposes’ of the jurisdictions involved.” Since this court has found no later indication of when the lex loci delicti rule will be displaced, it will attempt to apply the quoted standard, nebulous and ephemereal as it finds it to be.
Giving application to the instant motion of what this court has opined to be the current status of the law, note is first made that the place of the accident in issue was the State of New York. Thus, it is determined the law of New York, the lex loci delicti is to be applied, unless the displacement of that rule will advance the relevant substantive law purposes of New York and Pennsylvania, the jurisdictions here involved.
It appears to this court that the substantive law of New York, imposing vicarious liability upon an owner of a vehicle for the negligence of the operator of that vehicle, driving with the owner’s permission, will not be advanced by displacing the lex loci delicti rule. This is for the same reasons as those noted by Justice Cardamone in Bray v Cox (39 AD2d 299, 301, supra). There, he sagely observed: "Foremost among New York’s identifiable interests is supervision over the conduct of drivers using its highways. The civil remedy of damages for the negligent infliction of personal injuries is a sanction used by this State to induce careful driving. Another recognized and accepted interest is in assuring that New York vendors who furnish medical and hospital care to injured parties are compensated (Carroll v. Lanza, 349 U.S. 408, 413; see, also, Cavers, 63 Col. L. Rev. 1219, 1224-1225). A proper inquiry into governmental interest requires consideration of the fact that in this case and indeed in most similar cases there is the likelihood of the existence of New York vendors (Matter of Clark, 21 N Y 2d 478, 479). Finally, New York has a public fiscal interest in assuring that indigent nonresident accident victims do not become public charges and that, if they do, New York State can recoup its welfare expense from the victim’s recovery (cf. Matter of Clark, supra, p. 489). In summary, New York’s identifiable interests are highway safety, economic protection of New York vendors, and State public fiscal interests.”
The only discernible advancement to the substantive law of Pennsylvania that would accrue by rejecting the lex loci delicti rule and applying the agency doctrine of that State *621 would be to protect Pennsylvania insurance companies and continue nonproven and speculatively lower liability insurance premiums for the automobile owners of that State.
In Miller v Miller (22 NY2d 12, 21) and in Bray v Cox (39 AD2d, supra, 299, 301) it was observed that a foreign insurer must have anticipated the protection of owners not only from accidents occurring in the foreign jurisdiction, but in other jurisdictions as well. As a consequence, the courts concluded that the imposition of New York law would have only an "infinitestimal” effect (Miller v Miller, supra, p 21) or "little” effect (Bray v Cox, supra, p 301) on the foreign insurance rates.
Young v Masci (289 US 253), an older case decided by the Supreme Court, appears to be relevant. There, it appeared that a New Jersey owner of an automobile loaned the same to another New Jersey domiciliary who took the vehicle to New York State and there injured a resident of New York State. The injured New Yorker went to New Jersey and sued the owner. The owner’s defense was that the bailment of the automobile had been in New Jersey; that the owner was not present in New York at the time of the accident and that the bailee operator of the automobile was not his agent or engaged in his business, a prerequisite for owner’s liability under then New Jersey law. As a consequence, the owner defendant urged that application of the law of New York under section 59 of the Vehicle and Traffic Law (predecessor to Vehicle and Traffic Law, § 358) would deprive him of due process of law in violation of the Fourteenth Amendment. The Supreme Court rejected the defense and held that the law of New York, as the law of the place of the accident, was properly applied in the New Jersey trial. In so doing, the Supreme Court said: "When Young [the owner] gave permission to drive his car to New York, he subjected himself to the legal consequences imposed by that State upon Balbino’s [operator] negligent driving as fully as if he had stood in the relation of master to servant.” (Young v Masci, 289 US, supra, p 258.)
Further, to the constitutional argument that there was a violation of the equal protection clause of the Fourteenth Amendment because the law of New Jersey would apply to accidents in New Jersey, whereas, New York law would be applied to accidents occurring in New York, the court said: "Obviously there is no denial of equal protection, since all who *622 permit their cars to be driven in New York are treated alike.” (Young v Masci, 289 US, supra, p 261.)
This court regards Young v Masci (supra) as significant on the questions of forum shopping and denial of equal protection of the laws which are raised in the choice of law tort conflicts area. Certainly it stands for the proposition that application of the rule lex loci delicti is constitutional. This court has discovered no similar ruling of constitutionality for application of "grouping of contacts” rule or "governmental interests” rule, or, in fact, any other rule espoused in the tort conflict area. In this court’s opinion all has not yet been determined on the constitutional problems that may surface in that area of the law.
In summary, because this court is convinced that the principle of lex loci delicti should apply generally to tort conflict problems, other than guest statute situations, and, in particular, should apply to the nonguest statute factual situation presented in the instant conflict setting, and because the court is of the opinion that the substantive law of New York will be advanced to a greater degree by application of the lex loci delicti rule than would the law of Pennsylvania by the rejection of that rule, and finally because the rule, lex loci delicti, has been held constitutional by the Supreme Court in an analogous fact situation, the motion to dismiss the affirmative defense is granted.