**Richard A. PATTON, Administrator of the Estate of Carl W. Patton, Deceased, and Richard and Betty Patton, in Their Own Right, Plaintiffs,**

v.

**Charles CARNRIKE and Susan Carnrike, a/k/a Marlene Carnrike, d/b/a Carnrike's Market, Defendants.**

No. 78–CV–464.

United States District Court,
N. D. New York.

March 6, 1981.

Smith, Sovik, Kendrick, McAuliffe & Schwarzer by Martin F. Kendrick, Syracuse, N. Y., for plaintiffs.

Friedlander, Friedlander & Reizes by Peter N. Littman, Waverly, N. Y., for defendants.

## MEMORANDUM and ORDER

### MacMAHON, District Judge.[*]

Plaintiffs seek damages, pursuant to New York's Dram Shop Act,[1] for injuries allegedly sustained by their decedent son in a single vehicle highway accident. Defendants have asserted an affirmative defense and counterclaim, alleging plaintiffs' failure to exercise proper parental supervision of their son's conduct. Plaintiffs now move to strike this defense and counterclaim, arguing that lack of parental supervision was not cognizable as a defense or as a counterclaim under the applicable law of New York. Defendants contend, however, that Pennsylvania law applies and that Pennsylvania does recognize such a defense and counterclaim.

Having carefully negotiated the labyrinth of New York's choice of law rules, we find that New York governs our disposition of this issue and requires us to grant the motion to strike the defense and counterclaim.

### Facts

The parties have adopted the same set of essential facts for the purposes of this motion. These facts are also consistent with those set up in defendants' answer.[2]

Decedent Carl W. Patton was a seventeen-year old who resided with his parents in Pennsylvania. William Bryan was a companion of Patton's, who, at the time of the accident, was also a minor and a resident of Pennsylvania. On the evening of September 10, 1977, Bryan borrowed his sister's car and, accompanied by Patton, drove to Waverly, New York, which is situated just north of the border between the two states.

---

[*] Chief Judge of the United States District Court for the Southern District of New York, sitting by designation.

1. N.Y.Gen.Obl. § 11–101(1) states:

 Any person who shall be injured in person, property, means of support, or otherwise by any intoxicated person, or by reason of the intoxication of any person, whether resulting in his death or not, shall have a right of action against any person who shall, by unlawfully selling to or unlawfully assisting in procuring liquor for such intoxicated person, have caused or contributed to such intoxication; and in any such action shall have a right to recover actual and exemplary damages.

 For the purposes of this motion, defendants concede that the dram shop act would apply to the facts of this case.. See *Manfredonia v. American Airlines, Inc.*, 68 A.D.2d 131, 416 N.Y.S.2d 286 (2d Dep't 1979). See also *Trapp v. 4·10 Investment Corp.*, 424 F.2d 1261 (8th Cir. 1970); *Dick v. Lambert*, 472 F.Supp. 560 (M.D.Pa.1979); *Bankord v. DeRock*, 423 F.Supp. 602 (N.D.Iowa 1976); *Zucker v. Vogt*, 200 F.Supp. 340 (D.Conn.1961).

2. *Kelly v. Kosuga*, 358 U.S. 516, 79 S.Ct. 429, 3 L.Ed.2d 475 (1959).

In Waverly, Bryan allegedly purchased two six-packs of beer at defendants' store. Although New York law forbids the sale of alcoholic beverages, including beer, to persons under the age of eighteen,[3] no effort was allegedly made to determine Bryan's age before he was permitted to purchase the beer.

It is further alleged that both youths began to drink the beer as Bryan drove the car along the highway. Bryan allegedly became intoxicated and lost control of the car, which struck an embankment and overturned near East Smithfield, Pennsylvania. Patton is claimed to have incurred fatal injuries in the accident.

### Discussion

Jurisdiction in this case is grounded on diversity of citizenship. Therefore, the choice of law rules of the forum state, New York, govern this action.[4] Our consideration of New York's choice of law rule, however, is contingent on the existence of an actual conflict[5] between the law of the states which have contact with the events at issue in this litigation.

 Pennsylvania has long held that in tort actions the contributory negligence of a minor's parents for their failure to supervise the child's conduct is a question of fact for the jury.[6] New York, on the other hand, has recently reaffirmed that it will not recognize a tort or defense grounded in parents' failure to supervise children.[7] Therefore, we find that there is a clear conflict between the law of Pennsylvania and New York concerning the availability to defendants of this defense and counterclaim. Having found that New York's choice of law rules are implicated, we must now identify what those rules are and which laws those rules would apply to resolve this conflict.

In *Babcock v. Jackson*,[8] the New York Court of Appeals held that lex loci delicti would no longer be the invariable rule in tort actions. Rather, lex loci will be displaced by the law of the state which, because of its relationship or contact with the occurrence or parties, has the greatest concern with the specific issue raised in the litigation.[9]

 Recent pronouncements, however, establish that lex loci remains the general rule in tort cases, to be displaced only in "extraordinary circumstances" when doing so would "advance the relevant substantive law purposes of the jurisdiction involved."[10] Judge Breitel has suggested that lex loci is to be "rejected only when it is evident that the situs of the accident is the least of the several factors or influences to which the

---

**3.** N.Y.Alc.Bev. § 65(1); *Bartkowiak v. St. Aldabert's R.C. Church Soc.*, 40 A.D.2d 306, 340 N.Y.S.2d 137 (4th Dep't 1973).

**4.** *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

**5.** An actual conflict between two rules of law exists when their application would yield inconsistent results. *See* A. Ehrenzweig, *Conflict of Laws* § 102 (1962). We do not understand the term to encompass the situation where both states, rather than just one, have an interest in seeing their law applied. *But see Dick v. Lambert, supra* note 1 at 562 n.3.

**6.** *Reardon v. Wilbur*, 441 Pa. 551, 272 A.2d 888 (1971); *Della Porta v. Pennsylvania R.R. Co.*, 370 Pa. 593, 88 A.2d 911 (1952); *Potanko v. Sears, Roebuck & Co.*, 368 Pa. 582, 84 A.2d 522 (1951); *Hogan v. Etna Concrete Block*, 325 Pa. 49, 188 A. 763 (1936); *Goldberg v. Philadelphia Transit Co.*, 299 Pa. 79, 149 A. 104 (1930); *Cover v. Hershey Transit Co.*, 290 Pa. 551, 139

A. 266, 267 (1927); *Dattola v. Burt Bros., Inc.*, 288 Pa. 134, 135 A. 736 (1927).

**7.** *Nolechuk v. Gesuale*, 46 N.Y. 332, 413 N.Y. S.2d 340, 385 N.E.2d 1268 (1978); *Holodook v. Spencer*, 36 N.Y.2d 35, 364 N.Y.S.2d 859, 324 N.E.2d 338 (1974); *Smith v. Sapienza*, 73 A.D.2d 224, 426 N.Y.S.2d 14 (2d Dep't 1980); *Lastowski v. Norge Coin-O-Matic*, 44 A.D.2d 127, 355 N.Y.S.2d 432 (2d Dep't 1974).

**8.** 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963).

**9.** *Id.* at 481, 240 N.Y.S.2d 745, 191 N.E.2d 279.

**10.** *Cousins v. Instrument Flyers*, 44 N.Y.2d 698, 405 N.Y.S.2d 441, 376 N.E.2d 914 (1978); *Neumeier v. Kuehner*, 31 N.Y.2d 121, 129, 335 N.Y. S.2d 64, 286 N.E.2d 454 (1972). *See also Himes v. Stalker*, 99 Misc.2d 610, 619, 416 N.Y.S.2d 986 (S.Ct. 1979).

accident may be attributed." [11] The full court signalled its approval of the latter test when it noted in a later decision that the site of an airplane crash is "most often fortuitous." [12]

We believe that this action, which arises under the New York Dram Shop Act and which involves an interstate automobile trip, is an extraordinary situation necessitating the displacement of lex loci by the interests analysis formulated in *Babcock* and its progeny.[13] Plaintiffs' claim under the New York Dram Shop Act is grounded on an unlawful sale of liquor that caused or contributed to the intoxication of Bryan, who, in turn, allegedly injured decedent by driving while intoxicated. Although these factors connected with the crash site will be relevant, the alleged unlawful sale of alcohol in New York is, under plaintiffs' theory of liability, the most "significant even[t] in this multi-state trip." [14] Assuming that Bryan was intoxicated while driving, the actual site of the crash was largely "fortuitous." We thus conclude that, in a Dram Shop action for injuries sustained in a highway accident, the importance of the crash site is clearly overshadowed by the location of the unlawful sale of liquor.[15]

Analyzing the interests of Pennsylvania and New York at stake in this action, we find that "the relevant substantive law purposes" of New York would be advanced by the application of its rule barring a defense or counterclaim based on improper parental supervision. Initially, we note our disagreement with defendants' contention that this issue must be analyzed solely in terms of whether New York or Pennsylvania has a superior interest in having a law governing parental supervision apply to a family residing in Pennsylvania. The conflict between these two competing laws regulating intrafamilial relations cannot be resolved in a vacuum. Rather, the conflict arises in the context of a defense and counterclaim to an action under the New York Dram Shop Act. Therefore, we must assess the relative interests of New York and Pennsylvania in applying their respective laws of parental supervision to the events underlying this action.

The New York Dram Shop Act created a statutory cause of action unknown at common law.[16] Under the statute, any person who unlawfully sells alcohol to an individual is held strictly liable [17] if that individual becomes intoxicated and causes injury to a third person. The dual purposes of the Act are "to prevent unlawful sales of liquor and to provide a remedy for injuries occasioned by one who was instrumental in wrongfully producing or wrongfully causing such intoxication." [18]

Addressing first the deterrent aspect of the Act, we observe that New York has made sales of liquor to minors a violation of Section 65 of its Alcoholic Beverage Control

---

11. *Neumeier v. Kuehner, supra* note 10, 31 N.Y.2d at 131, 335 N.Y.S.2d 64, 286 N.E.2d 454.

12. *Cousins v. Instrument Flyers, supra* note 10, 44 N.Y.2d at 699, 405 N.Y.S.2d 441, 376 N.E.2d 914.

13. Since its inception, the *Babcock* choice of law rule has been variously characterized as a grouping of contacts or center of gravity analysis, *see Babcock v. Jackson, supra note* 8, 12 N.Y.2d at 481, 240 N.Y.S.2d 743, 191 N.E.2d 279, or as a "governmental interests" analysis, *see Neumeier v. Kuehner, supra* note 10, 31 N.Y.2d at 131, 335 N.Y.S.2d 64, 286 N.E.2d 454 (Breitel, J., concurring); *Himes v. Stalker, supra* note 10. We think that the mandate of *Babcock* to choose the law of the state which "has the greatest concern with the specific issue raised in the litigation" directs the court to weigh the relative interests of each jurisdiction in having its law apply to the circumstances of the particular case pending before it. *See Rutherford v. Gray Line, Inc.,* 615 F.2d 944 (2d Cir. 1980).

14. *Cousins v. Instrument Flyers, supra* note 10, 44 N.Y.2d at 700, 405 N.Y.S.2d 441, 376 N.E.2d 914.

15. *See* cases cited *supra* note 1.

16. *Bertholf v. O'Reilly,* 74 N.Y. 509, 524 (1878).

17. *Berkeley v. Park,* 47 Misc.2d 381, 262 N.Y. S.2d 290 (Sup.1965).

18. *Mitchell v. The Shoals, Inc.,* 26 A.D.2d 78, 79, 271 N.Y.S.2d 137 (2d Dep't 1966), *aff'd,* 19 N.Y.2d 338, 280 N.Y.S.2d 113, 227 N.E.2d 21 (1967).

Law. In recognition of the harm which may be caused by the intoxicated individual, the legislature designed Section 65 to protect children from their own immaturity and inexperience with liquor.[19] The seriousness with which New York views liquor sales to minors is evidenced by the fact that such sales are malum prohibitum [20] and a violation of the penal code.[21]

When reading the Dram Shop Act in conjunction with Section 65,[22] we find that New York has a compelling interest in maintaining the integrity of the Act's deterrent effect. The Act's provisions, which are "penal in nature" and operate as a "civil fine," [23] are an integral part of New York's scheme to enforce its Alcoholic Beverage Control Law. New York chose to impose strict liability under the Act on the violator of Section 65 in order to prevent harm by the intoxicated minor to innocent third persons. This goal of deterring unlawful sales is well served by preserving the vendor's complete liability irrespective of where the injury occurred. Permitting the offending vendor to reduce recovery because of the parents' alleged failure to supervise their minor's conduct would frustrate New York's purpose in placing full responsibility upon the vendor to prevent sales of liquor to minors.

New York also has a manifest interest in permitting compensation for injuries occasioned by the transgressing vendor. Since the statute would provide relief to the nonresident visitor injured in New York, it is clear that the availability of this statutory

remedy was not intended to be predicated on residency. Similarly, injuries accruing to non-residents or residents beyond New York's border are also afforded a remedy if the sale occurred within the state.[24] The breadth of the compensatory relief created in favor of injured third parties demonstrates New York's express desire to compensate fully injuries occasioned by unlawful actions occurring within its domain.

The consistent refusal of New York courts to permit a defense of contributory negligence by the injured party to a Dram Shop action further indicates the certain refusal of New York to adhere to the Pennsylvania law of improper parental supervision. The New York courts have adamantly rebuffed any attempt to lessen the vendor's liability simply because plaintiff may have available other sources of compensation.[25] Moreover, the fact that the injured party was drunk, or that he was drinking with the intoxicated individual who caused him injury, will not prevent the imposition of full liability upon the vendor who unlawfully sold liquor.[26] Since New York will not permit defendants to complain of decedent's contributory negligence, *a fortiori*, neither will New York permit defendants to complain of a lack of supervision by decedent's parents over his conduct. We therefore conclude that the imposition of complete liability upon the vendor is deemed by New York to be critical to the efficacy of its Dram Shop Act.

**19.** *Erin Wine & Liquor Store v. O'Connell*, 283 A.D. 443, 128 N.Y.S.2d 364 (1st Dep't), *aff'd*, 307 N.Y. 768, 121 N.E.2d 614 (1954).

**20.** *Ross's Dairies, Ltd. v. Rohan*, 10 A.D.2d 987, 202 N.Y.S.2d 807 (2d Dep't 1960); *People v. Gar-Bob Corp.*, 49 Misc.2d 88, 266 N.Y.S.2d 771 (S.Ct. 1966).

**21.** N.Y.Pen. § 260.20(4).

**22.** *See Mitchell v. The Shoals, Inc., supra* note 18; *Moyer v. Lo-Jim Cafe, Inc.*, 19 A.D.2d 523, 240 N.Y.S.2d 277 (1st Dep't 1963), *aff'd*, 14 N.Y.2d 792, 251 N.Y.S.2d 30 (1964); *Vadasy v. Bill Feigel's Tavern, Inc.*, 88 Misc.2d 614, 391 N.Y.S.2d 32, *aff'd*, 55 A.D.2d 1011, 391 N.Y. S.2d 999 (4th Dep't 1977).

**23.** *Playford v. Perich*, 2 Misc.2d 170, 172, 152 N.Y.S.2d 201 (Sup.1956).

**24.** *See Manfredonia v. American Airlines, Inc., supra* note 1.

**25.** *Mitchell v. The Shoals, Inc., supra* note 18; *Kinney v. 1809 Forest Ave.*, 7 Misc.2d 1, 165 N.Y.S.2d 149 (Sup.1957); *Playford v. Perich, supra* note 23.

**26.** *Mitchell v. The Shoals, Inc., supra* note 18; *McNally v. Addis*, 65 Misc.2d 204, 317 N.Y.S.2d 157 (Sup.1970).

In striking contrast to New York's overwhelming interest in having its law apply, Pennsylvania lacks a competingly strong interest in permitting New York storeowners to invoke the Pennsylvania defense of improper parental supervision. Pennsylvania grounded its law in part upon the equitable notion that an individual is "not bound to protect ... children against a condition which they could reasonably expect their adult parents to discover."[27] Defendants' sale of liquor to minors, however, is governed by the strict liability rules and the standard of malum prohibitum enforced by New York. Since New York places full responsibility upon the vendors to prevent sales to minors, defendants had no reason to expect parents to guard against the sale of liquor to their minor children. The fortuity that the purchasers were residents of Pennsylvania cannot be a reasonable basis for diminishing defendants' duty under New York law.

Nor do we believe that Pennsylvania's purpose in fostering reasonable parental care will be significantly compromised by applying the New York rule to this action. Plaintiffs' claims are not grounded in negligence but are derived from the New York Dram Shop Act. Whatever interest Pennsylvania ordinarily may have in establishing the standard of children's care is significantly abated when, beyond the parents' normal purview,[28] an intervening act occurs which is illegal under applicable law.

■ Therefore, we find that New York's overriding interest in preserving the integrity of its Dram Shop Act demands that we apply New York law to bar a defense or counterclaim based on improper parental supervision. Accordingly, we grant plaintiffs' motion to dismiss defendants' ninth defense and counterclaim alleging lack of proper supervision by decedent's parents over his conduct.

So ordered.

---

27. *Della Porta v. Pennsylvania R.R. Co., supra* note 6, 370 Pa. 593, 88 A.2d 911, 912.

28. *See, e. g., Reardon v. Wilbur, supra; Dattola v. Burt Bros., Inc., supra* note 6.