[613 NYS2d 179]

DENISE B. RUTLEDGE, Individually and as Mother and Natural Guardian of DEREK J. REVELLA and Another, Infants, Respondent, v ROCKWELLS OF BEDFORD, INC., Appellant.

Second Department, May 16, 1994

---

## APPEARANCES OF COUNSEL

*Segan, Culhane, Nemerov & Singer, P. C.,* New York City *(Fred J. Hirsh* of counsel), for appellant.

*Sullivan & Liapakis, P. C.,* New York City *(Pamela Anagnos Liapakis, Frank V. Floriani* and *Stephen C. Glasser* of counsel), for respondent.

## OPINION OF THE COURT

HART, J.

The plaintiff's decedent, a resident of Connecticut, was a patron at the defendant's bar/restaurant located in Bedford, New York. It is alleged that the defendant's employees served the decedent alcohol, even though they knew he was intoxicated. On his way home, the decedent was involved in a one-car accident in Connecticut, in which he suffered fatal injuries. His widow commenced this action pursuant to General Obligations Law § 11-101 (the Dram Shop Act) to recover damages for loss of support. The widow sued on behalf of herself, the decedent's child, and the decedent's stepson, whom it was alleged the decedent was supporting. In response to the plaintiff's motion to compel discovery, the defendant cross-moved pursuant to CPLR 3211 (a) (7) to dismiss the complaint for failure to state a cause of action under General Obligations Law § 11-101. The defendant argued that General Obligations Law § 11-101 did not have extraterritorial effect, and further argued that a stepchild was not entitled to commence an action pursuant to General Obligations Law § 11-101.

General Obligations Law § 11-101 (1) provides, *inter alia:* "Any person who shall be injured in person, property, means of support, or otherwise by any intoxicated person * * * shall have a right of action against any person who shall, by unlawful[ly] selling to or unlawfully assisting in procuring liquor for such intoxicated person, have caused or contributed to such intoxication".

In 1873, during the Temperance Movement, the Legislature passed the Civil Damage Act, a predecessor "Dram Shop Act", indicating that its purpose was to "suppress intemperance, pauperism, and crime" (L 1873, ch 646). Inasmuch as the statute provided for the recovery of "actual" and "exemplary" damages by injured third parties, the Legislature's intent in enacting the statute was clearly to inhibit the sale of intoxicating liquor in circumstances which could lead to injuries to third parties. In this context, "exemplary" or "punitive" were used interchangeably.

The Act was amended in 1921 under Civil Rights Law § 16. As amended, it read, in part: "[a]ny person who shall be injured in person, property, means of support, or otherwise by any intoxicated person * * * whether resulting in his death or not, shall have a right of action * * * to recover actual and exemplary damages".

The statute has now been subsumed into General Obligations Law § 11-101 and reads essentially the same as did the Civil Rights Law.

### THE EXTRATERRITORIAL EFFECT OF GENERAL OBLIGATIONS LAW

#### § 11-101

■ The societal interest promoted by General Obligations Law § 11-101 is to prevent or discourage the sale of intoxicating beverages to intoxicated persons. The potential for a dram shop keeper to be held liable for actual and punitive damages based on a violation of General Obligations Law § 11-101 is intended to have a deterrent effect. "The Legislature believed that by imposing civil liability upon the seller he would be more careful in his sales * * * (Mead v Stratton, 87 NY 493). This statute, which is remedial in nature (see Wilcox v Conti, 174 Misc 230), thus creates an expansive cause of action completely unknown at common law (see Volans v Owen, 74 NY 526; Mead v Stratton, supra)" (Matalavage v Sadler, 77 AD2d 39, 43).

The basis of the underlying cross motion to dismiss in this case was the holding in Goodwin v Young (34 Hun 252 [3d Dept, 1884]). That decision concerned the interpretation of the Civil Damage Act of 1873. That Act mirrored General Obligations Law § 11-101, except that it did not provide for damages based on death. Damages for wrongful death were not recover-

able in New York State until 1896 as a result of a constitu-
tional amendment originating in the 1894 New York State
constitutional convention *(see,* NY Const, art I, former § 18
[now § 16]).

*Goodwin* involved a suit for damages against an innkeeper
by a plaintiff, who lived in Vermont, whose servant took a
team of his horses into New York State, and drank a glass of
liquor at the defendant's store. He also purchased bottled
whiskey, presumably for consumption at a later time. The
servant then returned to Vermont in an intoxicated condition.
The servant put one of the horses, a mare, in a barn, and left
the barn door open, allowing the wind to blow in upon the
mare, causing her sickness and death.

The *Goodwin* Court, in nonsuiting the plaintiff, held: "The
sale of liquor was not a wrongful act, either at common law or
by the statute * * * The wrongful act which caused the injury
to the plaintiff was the act of * * * his servant, and was done
in Vermont * * * our statute gives a cause of action for the
injury * * * as it is a special statutory provision, must refer to
an injury done in this State. It cannot be intended to have an
extra-territorial effect. The statute is peculiar, in that it
makes an innocent man liable for the wrongful act of an-
other" *(Goodwin v Young, supra,* at 253-254).

The defendant's reliance on *Goodwin* in support of its cross
motion to dismiss the complaint is unavailing, since the case
is clearly distinguishable on its facts. In the case at bar, the
complaint alleges that the deceased became intoxicated at the
defendant's establishment in Bedford, New York, and that,
due to his intoxication, had an accident in Connecticut, caus-
ing his death. Unlike the case at bar, in *Goodwin,* the cus-
tomer who caused the damage complained of did not become
intoxicated at the innkeeper's premises. The decision indicated
that the servant had only one drink at the establishment, and
carried away two bottles of liquor, without indicating where,
or if, he drank the same. There was no indication in the
record that the servant became intoxicated at the defendant's
premises. Accordingly, there was no evidence of an illegal
sale: hence, the Court's use of the term "innocent man" when
describing the defendant innkeeper was appropriate.

Further, the *Goodwin* Court pointed out that the record was
devoid of proof that a similar law existed in Vermont. How-
ever, in the instant case, it has been established that there is
an analogous Dram Shop Act in Connecticut *(see,* Conn Gen
Stat Annot § 30-102).

Moreover, we agree with the Supreme Court that *Goodwin v Young* (34 Hun 252, *supra)* no longer reflects the proper choice of law analysis employed by New York courts *(see, Farber v Smolack,* 20 NY2d 198; *Manfredonia v American Airlines,* 68 AD2d 131; *Patton v Carnrike,* 510 F Supp 625). In *Farber v Smolack (supra),* the Court of Appeals gave extraterritorial effect to Vehicle and Traffic Law § 388 (1) and EPTL 5-4.1 because New York was the jurisdiction having " 'the most significant relationship' with the issue presented" *(Farber v Smolack, supra,* at 204; *see also, Manfredonia v American Airlines, supra,* at 137). That choice of law analysis should be applied here.

The defendant's argument that the statute does not have extraterritorial effect does not pass dialectical muster. The location of the accident site is of no moment, as the determinative factor is the place where the innkeeper's impermissible act occurred. The defendant's argument that the statute does not have extraterritorial impact based on the residence of the plaintiff is not supported by *Goodwin v Young (supra),* since the immunizing of the offending innkeeper based on the out-of-State residence of the plaintiffs would frustrate the legislative purpose of holding the party who sold the intoxicant responsible for his act. The allegations of the complaint that the intoxicating beverages were sold or served by an innkeeper in New York State must be accepted as true, rendering the provisions of General Obligations Law § 11-101 applicable to the facts in this case.

Given the statute's clear intent to place liability upon the seller of intoxicating beverages, the jurisdiction having the most significant relationship is New York. "[T]he importance of the crash site is clearly overshadowed by the location of the * * * sale of liquor" *(Patton v Carnrike,* 510 F Supp 625, 628, *supra).* Moreover, insofar as the alleged egregious act by the tavern keeper occurred in New York State, the remedial objective of the statute would be nullified if the plaintiff were denied recovery merely because the decedent drove his vehicle across the State line before the fatal accident occurred.

Thus, we find no reason not to give General Obligations Law § 11-101 extraterritorial effect, where the sale of the intoxicating beverage occurs in New York, even though the resulting injury takes place out of State.

THE RIGHT OF A STEPCHILD TO RECOVER UNDER THE DRAM SHOP
ACT

Similarly, we disagree with the defendant's contention that the decedent's stepchild, who was the recipient of voluntary contributions of support from the deceased, cannot maintain an action for loss of support under the statute.

It is well-settled law that General Obligations Law § 11-101 does not create a cause of action on behalf of the intoxicated individual, or his estate, for injury or death as a result of his own intoxication, the proceeds of which would inure to the benefit of the decedent's distributees (see, Marsico v Southland Corp., 148 AD2d 503; Delamater v Kimmerle, 104 AD2d 242; Matalavage v Sadler, 77 AD2d 39, supra). In contrast, General Obligations Law § 11-101 (1) creates a cause of action to "[a]ny person who shall be injured in * * * means of support". Given the expansive language used, we reject the submission that the Legislature intended to restrict a support claim only to distributees, i.e., those persons who were owed a legal duty of support (see, Soto v Montanez, 173 AD2d 90). If the Legislature intended to limit recovery to only those persons having a legal right to support, it would have said so (see, EPTL 1-2.5, 4-1.1, 5-4.4, 5-4.5).

We have examined the defendant's remaining contentions and find them to be without merit.

Accordingly, the order is affirmed insofar as appealed from.

BRACKEN, J. P., O'BRIEN and COPERTINO, JJ., concur.

Ordered that the order is affirmed insofar as appealed from, with costs.