2138747 Ontario, Inc. v Samsung C&T Corp. (2018 NY Slip Op 04274)

2138747 Ontario, Inc. v Samsung C&T Corp.

2018 NY Slip Op 04274 [31 NY3d 372]

June 12, 2018

Fahey, J.

Court of Appeals

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, August 15, 2018

[*1]

2138747 Ontario, Inc., Appellant,
v
Samsung C&T Corporation et al., Respondents.

Argued April 24, 2018; decided June 12, 2018

2138747 Ontario, Inc. v Samsung C&T Corp., 144 AD3d 122, affirmed.

{**31 NY3d at 374} OPINION OF THE COURT

Fahey, J.

On this appeal, we must determine whether CPLR 202—New York's borrowing statute—applies when contracting parties have agreed that their contract would be "enforced" according to New York law. We conclude that it does.{**31 NY3d at 375}
I.
In September 2008, SkyPower Corp., an Ontario renewable energy developer, entered into a nondisclosure agreement (NDA) with defendants to facilitate defendants' evaluation of a potential transaction with SkyPower and its majority shareholder. The NDA allowed defendants to review SkyPower's confidential and proprietary information and contained provisions restricting the use and disclosure of that information, as well as provisions regarding destruction of the information furnished to defendants if they did not wish to proceed with the transaction.
[*2]
The anticipated transaction never materialized. Plaintiff alleges that in December 2008, defendants entered into a "Memorandum of Understanding" with the Ontario government for development of a renewable energy project that improperly made use of SkyPower's confidential and proprietary information, and that in September 2009 defendants signed a "Framework Agreement" with the Ontario government for the project. SkyPower filed for bankruptcy in 2009, and SkyPower's claims against defendants were assigned to plaintiff, a creditor of SkyPower's successor and also an Ontario corporation. Plaintiff commenced the present action in state court in New York, asserting causes of action for breach of contract and unjust enrichment, in October 2014.
Defendants moved to dismiss the complaint, arguing, as relevant here, that plaintiff's action was time-barred pursuant to Ontario's two-year statute of limitations (see Ontario Limitations Act, 2002, SO 2002, ch 24, schedule B, § 4), which applied pursuant to CPLR 202, New York's borrowing statute. New York's general statute of limitations for breach of contract actions is six years (see CPLR 213 [2]). Supreme Court concluded that plaintiff's claims accrued on September 26, 2009, and the parties do not challenge that determination here. Thus, the parties agree that if the six-year statute of limitations provided in CPLR 213 (2) applies, then plaintiff's action is timely, but if Ontario's two-year statute of limitations applies pursuant to CPLR 202, the action must be dismissed as time-barred. Defendants contend that New York's borrowing statute, CPLR 202, requires application of Ontario's shorter limitations period. Plaintiff, by contrast, contends that the choice-of-law provision in the NDA requires the conclusion that the parties intended to preclude application of CPLR 202 and instead apply{**31 NY3d at 376} solely the six-year limitations period provided by CPLR 213 (2).
The NDA contained the following choice-of-law provision:
"This Agreement shall be governed by, construed and enforced in accordance with the laws of the State of New York. You hereby irrevocably and unconditionally consent to submit to the exclusive jurisdiction of the courts of the State of New York and of the United States District Courts located in the County of New York for any lawsuits, actions or other proceedings arising out of or relating to this Agreement and agree not to commence any such lawsuit, action or other proceeding except in such courts. . . . You hereby irrevocably and unconditionally waive any objection to the laying of venue of any lawsuit, action or other proceeding arising out of or relating to this Agreement in the courts of the State of New York or the United States District Courts located in the County of New York, and hereby further irrevocably and unconditionally waive and agree not to plead or claim in any such court that any such lawsuit, action or other proceeding brought in any such court has been brought in an inconvenient forum."
Supreme Court dismissed plaintiff's claims asserted on SkyPower's behalf as time-barred (2016 NY Slip Op 31650[U] [2016]), and the Appellate Division affirmed, concluding that CPLR 202 applied (144 AD3d 122 [1st Dept 2016]). The parties subsequently entered into a so-ordered stipulation resolving an appeal from a final judgment dismissing plaintiff's remaining repleaded claims. We granted plaintiff leave to appeal from that stipulation (29 NY3d 913 [2017]), which brings up for review the prior non-final order of the Appellate Division. We now affirm.
II.
CPLR 202 provides:
"An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause{**31 NY3d at 377} of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply."
[*3]
In other words, "[w]hen a nonresident sues on a cause of action accruing outside New York, CPLR 202 requires the cause of action to be timely under the limitation periods of both New York and the jurisdiction where the cause of action accrued" (Global Fin. Corp. v Triarc Corp., 93 NY2d 525, 528 [1999]). The parties agree that plaintiff's claims asserted on behalf of SkyPower accrued in Ontario. Application of the borrowing statute would therefore require plaintiff's action to be timely under Ontario's two-year statute of limitations. Plaintiff contends, however, that the NDA's broad contractual choice-of-law provision encompasses a choice of New York's procedural law, including New York's general six-year statute of limitations in CPLR 213 (2), to the exclusion of CPLR 202, which plaintiff equates to a "statutory choice-of-law directive" of the kind that we held should not be applied in Ministers & Missionaries Benefit Bd. v Snow (26 NY3d 466 [2015], rearg denied 26 NY3d 1136 [2016]).
We begin with the "fundamental, neutral precept of contract interpretation . . . that agreements are construed in accord with the parties' intent," and "[t]he best evidence of what parties to a written agreement intend is what they say in their writing" (Greenfield v Philles Records, 98 NY2d 562, 569 [2002] [internal quotation marks omitted]). In addition, it is a "deeply rooted" principle of New York contract law that parties "may . . . contract as they wish" (J.P. Morgan Sec. Inc. v Vigilant Ins. Co., 21 NY3d 324, 334 [2013] [internal quotation marks omitted]) in the absence of "some violation of law or transgression of a strong public policy" (Rowe v Great Atl. & Pac. Tea Co., 46 NY2d 62, 67-68 [1978]; see New England Mut. Life Ins. Co. v Caruso, 73 NY2d 74, 81 [1989], rearg denied 74 NY2d 651 [1989]).
Contractual "[c]hoice of law provisions typically apply to only substantive issues . . . and statutes of limitations are considered 'procedural' because they are deemed 'as pertaining to the remedy rather than the right' " (Portfolio Recovery Assoc., LLC v King, 14 NY3d 410, 416 [2010], quoting Tanges v Heidelberg N. Am., 93 NY2d 48, 54-55 [1999]). Here, however, the parties agree with the Appellate Division's determination that the contract "should be interpreted as reflecting the parties' intent to apply both the substantive and procedural law of New York State to their disputes" (144 AD3d at 126-127).
{**31 NY3d at 378}CPLR 202 is an abiding part of New York's procedural law. "CPLR 202 is a reenactment, without substantive change, of section 13 of the Civil Practice Act which in turn substantially reenacted section 390-a of the Code of Civil Procedure, added in 1902 (L 1902, ch 193)" (Antone v General Motors Corp., Buick Motor Div., 64 NY2d 20, 27 [1984]; see Global Fin. Corp., 93 NY2d at 528-529). "[E]arlier iterations of the borrowing statute predate the substantive choice-of-law 'interest analysis' test used in tort cases and the 'grouping of contacts' or 'center of gravity' approach used in contract cases" (Global Fin. Corp., 93 NY2d at 529 [citations omitted]). We have described CPLR 202 as "part of this State's procedural code" (Insurance Co. of N. Am. v ABB Power Generation, 91 NY2d 180, 187 [1997]; see Martin v Dierck Equip. Co., 43 NY2d 583, 588 [1978]).
It is undisputed that had the NDA's choice-of-law provision incorporated only New York substantive law and contained a New York forum selection clause, New York would apply its own procedural law as the law of the forum (see Tanges, 93 NY2d at 53), including CPLR 202 (see Portfolio Recovery Assoc., 14 NY3d at 416). Indeed, where the Court has held that parties have opted into New York procedural law in the past, it has suggested that CPLR 202 may apply. Thus, in Matter of Smith Barney, Harris Upham & Co. v Luckie (85 NY2d 193 [1995]), which involved contractual choice of law provisions similar to that at issue here (see id. at 198-199), the Court remitted to the Appellate Division for a determination regarding statute of limitations issues and instructed the Appellate Division to consider, among other things, the "applicability of the borrowing statute" in making that determination (see id. at 206-207).
Plaintiff argues that because the contract in this case specified that it would be "enforced" according to New York law, the parties intended to apply New York's procedural law except for its statutory choice-of-law provisions, which, plaintiff alleges, includes CPLR 202. We conclude, however, that the mere addition of the word "enforced" to the NDA's choice-of-law provision does not demonstrate the intent of the contracting parties to apply solely New York's six-year statute of limitations in CPLR 213 (2) to the exclusion of CPLR 202. Rather, the parties have agreed that the use of the word "enforced" evinces the parties' intent to apply New York's procedural law. CPLR 202 is part of that procedural law, and the statute therefore applies here.{**31 NY3d at 379}
[*4]
Our decision in Ministers & Missionaries does not require a contrary conclusion. That case represented an extension of our decision in IRB-Brasil Resseguros, S.A. v Inepar Invs., S.A. (20 NY3d 310 [2012], cert denied 569 US 994 [2013]), in which we held that the parties' contractual choice of New York's substantive law, made pursuant to General Obligations Law § 5-1401, precluded application of New York's common-law conflict-of-laws principles (see id. at 315-316). In Ministers & Missionaries, we extended that holding to contracts outside the scope of General Obligations Law § 5-1401 and to "statutory choice-of-law directives," reasoning that choice-of-law directives enacted into statute stood on equal footing with their common-law counterparts (Ministers & Missionaries Benefit Bd., 26 NY3d at 473-475). We stated that if, under IRB-Brasil,
"New York's common-law conflict-of-laws principles should not apply when the parties have chosen New York law to govern their dispute . . . and EPTL 3-5.1 (b) (2) simply represents a common-law conflicts principle that has been codified into statute, that provision should not be considered in resolving this dispute" (id. at 474).
CPLR 202, however, differs from the statutory choice-of-law directive at issue in Ministers & Missionaries. Inasmuch as earlier iterations of CPLR 202 predate our current common-law conflicts approaches, we have recognized a "significant difference" between those common-law conflicts principles and a statute of limitations issue governed by the CPLR, including CPLR 202 (see Global Fin. Corp., 93 NY2d at 528-529). Indeed, the parties agree that unlike the statute at issue in Ministers & Missionaries, which we described as "merely a codification of a long-standing common-law conflict-of-laws principle, eventually placed within the EPTL because it corresponds to that general area of law" (Ministers & Missionaries, 26 NY3d at 473), CPLR 202 is in derogation of the long-standing common-law conflicts principle that the law of the forum applies to procedural issues such as the statute of limitations (see e.g. Portfolio Recovery Assoc., 14 NY3d at 416; Martin, 43 NY2d at 588; Miller v Brenham, 68 NY 83, 87 [1877]). Furthermore, until 1988, the Restatement (Second) of Conflict of Laws did not consider "borrowing statutes" to be "substantive" law subject to common-law choice-of-law principles, but rather applied as a matter of course to bar actions (see Restatement [Second] of Conflict of Laws § 142 [1] [1971] ["(A)n action will {**31 NY3d at 380}not be maintained if it is barred by the statute of limitations of the forum, including a provision borrowing the statute of limitations of another state"]). The Restatement changed its position in 1988 (see Restatement [Second] Conflict of Laws § 142 [1988]), but this Court continues to treat statutes of limitation as procedural (see e.g. Portfolio Recovery Assoc., 14 NY3d at 416; Tanges, 93 NY2d at 59). For these reasons, we reject plaintiff's invitation to broadly redefine a "statutory choice-of-law directive" as any statute that may require the application of the law of another state, inasmuch as that definition is unmoored from the rationale of our decisions in IRB-Brasil and Ministers & Missionaries.[FN1]
In addition, IRB-Brasil and Ministers & Missionaries each involved a contractual choice-of-law provision that chose only New York's substantive law. The Court considered the extent to which common-law or statutory principles that refer to the substantive law of another jurisdiction should apply in light of that choice. Those cases did not consider a contractual choice-of-law provision that involved a choice of procedural law, or the boundaries of contracting parties' ability to preclude application of certain of New York's procedural laws in an action brought in New York courts.
We further disagree with plaintiff that it is irrational to conclude that the contracting parties may have intended for CPLR 202 to apply. As explained, the borrowing statute is a stable fixture of New York's procedural [*5]law, of which these sophisticated commercial entities were presumably aware when they chose New York's procedural law to govern their arrangement. Notably, the NDA was signed in 2008, several years before we decided Ministers & Missionaries and therefore before the phrase "statutory choice-of-law directive" entered our vocabulary. It is therefore reasonable to conclude that the parties may have intended for CPLR 202 to apply, perhaps for strategic reasons, or because they did not think at the time that it was possible to contract around the application of statutes they believed to be statutory choice-of-law directives, or otherwise.{**31 NY3d at 381}
Furthermore, although "in the instant case, forum-shopping is not a consideration, since the parties in their agreement have designated New York as their forum of choice," we have stated that discouraging forum shopping is not the statute's "only purpose" (Insurance Co. of N. Am., 91 NY2d at 187). "As part of this State's procedural code, CPLR 202 is [also] designed to add clarity to the law and to provide the certainty of uniform application to litigants" (id.). Thus, we have applied CPLR 202 even in cases where the contracting parties agreed to exclusive venue in New York (see id. at 187-188).
In short, where a contract "was negotiated between sophisticated, counseled business people negotiating at arm's length," courts should be especially "reluctant to interpret an agreement as impliedly stating something which the parties have neglected to specifically include" (Vermont Teddy Bear Co. v 538 Madison Realty Co., 1 NY3d 470, 475 [2004] [internal quotation marks omitted]). "Hence, 'courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing' " (id., quoting Reiss v Financial Performance Corp., 97 NY2d 195, 199 [2001]). Here, the contracting parties chose New York's procedural law, and CPLR 202 is part of that procedural law. The borrowing statute therefore applies.
Inasmuch as the NDA did not expressly provide that disputes arising from the agreement would be governed by New York's six-year statute of limitations, or otherwise include language that expressed a clear intent to preclude application of CPLR 202, we, like the Appellate Division, have no occasion to address whether enforcement of such a contractual provision would run afoul of CPLR 201 or General Obligations Law § 17-103, or would otherwise violate New York's public policy against contractual extensions of the statute of limitations before accrual of the cause of action (see generally John J. Kassner & Co. v City of New York, 46 NY2d 544, 550-551 [1979]). We therefore express no opinion on that issue.[FN2]
Accordingly, the stipulation appealed from and the Appellate Division order brought up for review should be affirmed, with costs.{**31 NY3d at 382}
Chief Judge DiFiore and Judges Rivera, Stein, Wilson and Feinman concur; Judge Garcia taking no part.
Stipulation appealed from, and Appellate Division order brought up for review, affirmed, with costs.

Footnotes

Footnote 1:Although statutes enacted in derogation of the common law must be strictly construed (see Oden v Chemung County Indus. Dev. Agency, 87 NY2d 81, 86 [1995]), we are not construing or interpreting the text of CPLR 202 here. Rather, we are deciding, based on the language of the parties' contract, whether CPLR 202 applies at all to disputes arising from that agreement.

Footnote 2:In that regard, we also have no occasion to opine on whether any resemblance between CPLR 202 and a "choice-of-law" directive, insofar as it directs the application of the law of another jurisdiction, may be relevant to that question.