S.H. v Diocese of Brooklyn (2022 NY Slip Op 02982)

S.H. v Diocese of Brooklyn

2022 NY Slip Op 02982

Decided on May 4, 2022

Appellate Division, Second Department

Christopher, J., J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on May 4, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
LINDA CHRISTOPHER
PAUL WOOTEN
DEBORAH A. DOWLING, JJ.

2020-07387
 (Index No. 517999/19)

[*1]S.H., appellant,
v
Diocese of Brooklyn, respondent.

APPEAL by the plaintiff, in an action to recover damages for negligence, from a judgment of the Supreme Court (George J. Silver, J.), dated August 21, 2020, and entered in Kings County. The judgment, upon an order of the same court dated August 14, 2020, granting the defendant's motion pursuant to CPLR 3211(a) to dismiss the amended complaint as time-barred, is in favor of the defendant and against the plaintiff dismissing the amended complaint.

Herman Law, New York, NY (Jeffrey M. Herman, Stuart Mermelstein, and Jason Sandler of counsel), for appellant.
Shaub, Ahmuty, Citrin & Spratt, LLP, Lake Success, NY (Christopher Simone, Robert M. Ortiz, and Jeremy S. Rosof of counsel), for respondent.

CHRISTOPHER, J.

OPINION & ORDER
Introduction
This appeal raises issues of first impression concerning whether CPLR 214-g, the statute enacted as part of the New York Child Victims Act that revives time-barred causes of action brought by survivors of childhood sexual abuse, is available to a nonresident plaintiff where the alleged acts of abuse occurred outside New York, and moreover, whether CPLR 202, New York's "borrowing" statute, limits the statutory period under which a cause of action that accrued outside New York may be brought when the statute of limitations of that state has passed. For the reasons that follow, we hold that under the circumstances of this case, CPLR 214-g is not available to nonresident plaintiffs where the alleged acts of abuse occurred outside New York and that CPLR 214-g does not preclude the application of CPLR 202 in determining the appropriate limitations period for a cause of action that accrued outside the State.
Factual and Procedural Background
The plaintiff, a Florida resident, alleges that from approximately fall 1983 through spring 1984, when he was 14 to 15 years old, while serving as an altar boy at All Souls Church in Sanford, Florida, within the Diocese of Orlando, he was sexually abused on multiple occasions by Father William Authenrieth, who had been ordained by the defendant, the Diocese of Brooklyn, in 1962. The plaintiff alleges that, after he was ordained, Father Authenrieth was initially assigned to a church in Brooklyn, but in October 1973 he was transferred by the defendant to the Diocese of Orlando after the defendant became aware of his "sexual misconduct with children."
In 2013, the plaintiff, designated as John Doe No. 102, commenced an action (hereinafter the Florida action) in the Circuit Court of the Ninth Judicial Circuit in Orange County, Florida, against the Diocese of Orlando to recover damages for psychological injuries allegedly [*2]sustained by him as a result of sexual abuse committed against him by Father Authenrieth in the 1980s when Father Authenrieth was serving in the Diocese of Orlando. In November 2013, the Diocese of Orlando moved to dismiss the complaint in the Florida action on the ground that it was time-barred under Florida's four year statute of limitations for negligence actions. In May 2014, the Circuit Court denied the Diocese of Orlando's motion. On November 6, 2015, the plaintiff voluntarily discontinued the complaint in the Florida action with prejudice.
The Florida action was one of a group of actions brought in Florida against the Diocese of Orlando alleging child sexual abuse by Father Authenrieth. The lead action in that group was commenced by a plaintiff known as John Doe No. 93. The complaint filed by John Doe No. 93 also named the Diocese of Brooklyn as a defendant. However, on October 21, 2013, after the Diocese of Brooklyn moved to dismiss the complaint filed by John Doe No. 93 insofar as asserted against it for lack of personal jurisdiction, John Doe No. 93 voluntarily discontinued the complaint insofar as asserted against the Diocese of Brooklyn.
In 2019 and 2020, the plaintiff, as well as others claiming to be sexual abuse survivors, commenced actions in New York against the defendant pursuant to CPLR 214-g, known as the "revival statute," enacted as part of New York's Child Victims Act, asserting causes of action to recover damages for negligence. The plaintiff alleges in the amended complaint, inter alia, "upon information and belief" that the defendant transferred Father Authenrieth to the Diocese of Orlando when it knew or should have known that Father Authenrieth posed a foreseeable danger to children, in that he would commit acts of child sexual abuse, and that the defendant breached its duty to warn the Diocese of Orlando thereof. The plaintiff alleges that the transfer was made in accordance with a policy of secrecy and a general pattern and practice of concealing sexual abuse by clergy and protecting the defendant from scandal and liability. The plaintiff further alleges that "Father Authenrieth was a serial sexual predator who sexually abused numerous children over decades during his assignments in the Diocese of Brooklyn and the Diocese of Orlando." The plaintiff asserts that as a proximate result of the defendant's negligence, he suffered permanent psychological, emotional, and physical injuries and the inability to lead a normal life caused by the alleged sexual abuse perpetrated upon him by Father Authenrieth.
Prior to joining issue, the defendant moved pursuant to CPLR 3211(a) to dismiss the amended complaint as time-barred. Pursuant to a stipulation entered into on August 13, 2020, the defendant's motion to dismiss in this action was treated as a coordinated motion, the determination of which would also govern four other actions with common issues that were pending against this defendant. In an order dated August 14, 2020, the Supreme Court granted the defendant's motion. The court found that CPLR 214-g did not apply to the plaintiff's time-barred claims, so as to revive them, inasmuch as the alleged sexual abuse did not occur in New York. The court also determined, inter alia, that CPLR 202, New York's borrowing statute, was controlling as to the determination of the timeliness of this action, and that pursuant thereto the action was time-barred based on Florida's shorter limitations period. The court subsequently entered a judgment dated August 21, 2020, in favor of the defendant and against the plaintiff dismissing the amended complaint. The plaintiff appeals.
The Child Victims Act
The Child Victims Act (hereinafter CVA), among other things, provides for amendments with regard to certain statutes of limitations with respect to sex crimes committed against children less than 18 years of age. The CVA provides, inter alia, that civil actions brought by any person for physical, psychological, or other injury suffered as a result of conduct that would constitute a sex crime, that was committed against such person when they were less than 18 years of age, may now be commenced against any party "whose intentional or negligent acts or omissions are alleged to have resulted in the commission of [such] conduct" up until the date the plaintiff reaches the age of 55 (CPLR 208[b]). Prior to the enactment of the CVA, the applicable statute of limitations for such actions typically would begin to run when the victim reached the age of 18 (see id. former § 208 [L 1986, ch 485, § 1]).
CPLR 214-g was enacted as part of the CVA. CPLR 214-g originally opened a one-year window reviving civil claims or causes of action alleging intentional or negligent acts or omissions that seek to recover for injuries suffered as a result of conduct which would constitute sex crimes, which conduct was committed against a child less than 18 years of age, for which the statute [*3]of limitations had already run [FN1]. CPLR 214-g provides, in pertinent part, that:
"Notwithstanding any provision of law which imposes a period of limitation to the contrary . . . , every civil claim or cause of action brought against any party alleging intentional or negligent acts or omissions by a person for physical, psychological, or other injury or condition suffered as a result of conduct which would constitute a sexual offense as defined in article one hundred thirty of the penal law committed against a child less than eighteen years of age, incest as defined in section 255.27, 255.26 or 255.25 of the penal law committed against a child less than eighteen years of age, or the use of a child in a sexual performance as defined in section 263.05 of the penal law, or a predecessor statute that prohibited such conduct at the time of the act, which conduct was committed against a child less than eighteen years of age, which is barred as of the effective date of this section because the applicable period of limitation has expired, and/or the plaintiff previously failed to file a notice of claim or a notice of intention to file a claim, is hereby revived, and action thereon may be commenced not earlier than six months after, and not later than two years and six months after the effective date of this section. In any such claim or action: . . . (b) dismissal of a previous action, ordered before the effective date of this section, on grounds that such previous action was time barred, and/or for failure of a party to file a notice of claim or a notice of intention to file a claim, shall not be grounds for dismissal of a revival action pursuant to this section."
The interpretation of this statutory language presents questions of law for this Court to resolve de novo (see Weingarten v Board of Trustees of N.Y. City Teachers' Retirement Sys., 98 NY2d 575, 580). "It is fundamental that a court, in interpreting a statute, should attempt to effectuate the intent of the Legislature" (Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 583 [internal quotation marks omitted]).
Background and Legislative History of the Child Victims Act
The plaintiff argues that the language of CPLR 214-g unambiguously allows this lawsuit and therefore we need not resort to legislative history. He further contends that, in the event there is ambiguity, the legislative history supports his claim that the legislature did not intend to impose a limitation based on where the sexual act took place.
As both parties argue that the statute unambiguously supports their view, we commence our analysis with a review of the legislative history of the bill. On February 14, 2019, the CVA was signed into law (L 2019, ch 11, § 3). The CVA sought to remedy the injustices to survivors of child sexual abuse by extending New York's restrictive statutes of limitations that required most survivors to file civil actions or criminal charges long before they reported or came to terms with their abuse. The statute recognized that "thousands of survivors are unable to sue or press charges against their abusers, who remain hidden from law enforcement and pose a persistent threat to the public" (Senate Introducer's Mem in Support, Bill Jacket, L 2019, ch 11 at 7). The CVA is a "legislative acknowledgment of the unique character of sex crimes against children, which can have a multitude of effects upon victims, including being justifiably delayed in otherwise timely taking action against their abusers and/or those who facilitated their abuse" (New York Committee Report, 2015 NY Assembly Bill A10600). In enacting these reforms the legislature also recognized that "certain abusers—sometimes aided by institutional enablers and facilitators—have been successful in covering up their heinous acts against children" (id.).
The legislative history supports a finding that the legislature intended that the CVA provide relief to New York residents alone. The Senate Introducer's Memo in support of Bill S2440 [*4]justified the CVA by recognizing that "New York is one of the worst states in the nation for survivors of child sexual abuse," and stated that the CVA "would open the doors of justice to the thousands of survivors of child sexual abuse in New York State" (Senate Introducer's Mem in Support, Bill Jacket, L 2019, ch 11 at 7). Senator Brad Hoylman, in favor of the bill, pronounced "[s]o Madam President, I join my colleagues in supporting this important legislation and urging us to stand up, once and for all, for the survivors of child sexual abuse and ensure that our children are safe everywhere in the State of New York" (NY Senate Debate on Senate Bill S2440, Jan. 28, 2019 at 745 [emphasis added]). Senator Timothy Kennedy, explaining his vote in favor of the bill, acknowledged that "[t]oday is for New York survivors, survivors of childhood sexual abuse" (id. at 760). Senator Catharine Young, also voting in favor, noted that the bill "helps every single victim in this State" (id. at 773). Statements made by Senators Andrew Gounardes, Todd Kaminsky, and Toby Ann Stavisky similarly acknowledge that the bill was enacted with New York state victims in mind (see Andrea Stewart-Cousins, Senate Majority Stands Up For Survivors, Passes Child Victims Act, The New York State Senate [Jan. 28, 2019], available at https://www.nysenate.gov/newsroom/articles/2019/andrea-stewart-cousins/senate-majority-stands-survivors-passes-child-victims [last accessed Feb. 23, 2022]). The legislative history of the enactment of CPLR 214-g supports our finding that it was enacted for the benefit of New York residents.
CPLR 214-g Does Not Apply Extraterritorially
While the legislative history supports a finding that the revival statute was propagated by the New York Legislature to benefit New York residents, the argument against extraterritorial application further supports the limitation of CPLR 214-g.
As discussed previously, the Supreme Court properly found that CPLR 214-g is not applicable to the plaintiff in this case. However, the court's analysis misconstrued the language of the statute. The court found that for CPLR 214-g to apply to a claim, a plaintiff must allege negligent or intentional acts or omissions by a person for injuries suffered "as a result of a violation of" (emphasis added) one of certain specified sections of the penal law. Therefore, the court reasoned that New York's Penal Law and Criminal Procedure Law were implicated (see CPL 20.10; Penal Law § 10.00[1]), and, in essence, established that the New York state boundary limitations required for prosecution of criminal offenses applied to CPLR 214-g. However, a close reading of the actual language of the statute evinces that it is not a violation of one of the enumerated penal statutes that is required to trigger the revival of certain civil causes of action, but rather it is "conduct which would constitute" either a sexual offense as defined in article 130 of the Penal Law, or incest, or use of a child in a sexual performance, as defined in certain sections of the Penal Law (CPLR 214-g). Thus, we do not find that the territorial limitations imposed by New York's criminal statutes are a proper basis for determining that CPLR 214-g does not apply extraterritorially. Pursuant to the settled rule of statutory interpretation, "unless expressly stated otherwise, 'no legislation is presumed to . . . operate outside the territorial jurisdiction of the state . . . enacting it'" (Goshen v Mutual Life Ins. Co. of N.Y., 286 AD2d 229, 230, affd 98 NY2d 314, quoting 73 Am Jur 2d, Statutes § 359 at 492; see McKinney's Cons Laws of NY, Book 1, Statutes § 149 ["every statute in general terms is construed as having no extraterritorial effect"]; see generally Morgan v Bisorni, 100 AD2d 956, 956-957). "New York recognizes the general rule that a statute is presumed to apply only within the [s]tate (56 NY Jur, Statutes, § 263, pp 708-709), and that the Legislature may limit the territorial application of a statute" (Manfredonia v American Airlines, 68 AD2d 131, 137).
Moreover, "[s]pecial laws," such as CPLR 214-g, "that revive causes of action are 'extreme example[s] of legislative power' and are narrowly construed" (In re Agent Orange Prod. Liab. Litig., 597 F Supp 740, 815 [ED NY], affd 818 F2d 145 [2d Cir], quoting Hopkins v Lincoln Trust Co., 233 NY 213, 215; see Besser v Squibb & Sons, 146 AD2d 107, 115, affd 75 NY2d 847). While the plaintiff argues that the CVA is a remedial statute entitled to broad construction, CPLR 214-g is a distinct component of the CVA, and is clearly a revival statute (see Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal, 35 NY3d 332, 371-372). Here, there is no express provision in CPLR 214-g, a revival statute, providing for its application to a nonresident whose injury occurred outside of New York. Moreover, as set forth above, contrary to the plaintiff's contention, the legislative history of the CVA evinces a clear intent to benefit New York survivors of sexual abuse.
This Court has analyzed issues of extraterritoriality when determining whether [*5]General Obligations Law § 11-101, known as the Dram Shop Act, would have extraterritorial effect (see Rutledge v Rockwells of Bedford, 200 AD2d 36; Manfredonia v American Airlines, 68 AD2d 131). General Obligations Law § 11-101(1), provides, inter alia, that "[a]ny person who shall be injured in person, property, means of support, or otherwise by any intoxicated person, or by reason of the intoxication of any person, whether resulting in his death or not, shall have a right of action against any person who shall, by unlawful selling to or unlawfully assisting in procuring liquor for such intoxicated person, have caused or contributed to such intoxication." In Manfredonia v American Airlines, this Court found that General Obligations Law § 11-101 did not apply extraterritorially when the crew of a plane which had departed from New York sold liquor to a passenger while outside New York who then assaulted another passenger outside New York (see Manfredonia v American Airlines, 68 AD2d at 137). While recognizing that General Obligations Law § 11-101 is a unique statute, not necessarily similar to CPLR 214-g, we nonetheless find the analysis in Rutledge and Manfredonia to be instructive in determining that CPLR 214-g does not apply extraterritorially in the instant matter. The plaintiff contends that in this case CPLR 214-g would not be operating outside of New York's territorial jurisdiction because it is only the acts of sexual abuse that took place in Florida, while it is the alleged negligent conduct of the defendant in New York that resulted in the abuse suffered by the plaintiff in Florida. However, this does not change the fact that the plaintiff is a Florida resident who allegedly was sexually abused in Florida by another Florida resident. Moreover, we note that while General Obligations Law § 11-101 is a remedial statute, and as such "'should be liberally construed to effectuate [its] aims'" (Jensen v General Elec. Co., 82 NY2d 77, 83, quoting Enright v Eli Lilly & Co., 77 NY2d 377, 385 n 1 [internal quotation marks omitted]; see Rutledge v Rockwells of Bedford, 200 AD2d at 40), as previously set forth CPLR 214-g is a revival statute, and as such must be narrowly construed (see Besser v Squibb & Sons, 146 AD2d at 115; In re Agent Orange Prod. Liab. Litig., 597 F Supp at 815).
The issue of the territorial reach of General Business Law § 349 was addressed by the Court of Appeals in Goshen v Mutual Life Ins. Co. of N.Y. (98 NY2d 314). General Business Law § 349(a) prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." In Goshen, the Court found that "the transaction in which the consumer is deceived must occur in New York" (Goshen v Mutual Life Ins. Co. of N.Y., 98 NY2d at 324). The Goshen Court also concluded that "to qualify as a prohibited act under the statute, the deception of a consumer must occur in New York" (id. at 325). In reaching that conclusion, in addition to relying on the words of the statute which evince a "legislative intent to address commercial [conduct] occurring within New York," the Court also noted that the legislative history revealed that the statute was intended to "protect consumers in their transactions that take place in New York State" (id. at 324-325). The plaintiff claims that Goshen is distinguishable because, unlike the statute in Goshen, CPLR 214-g has no express language that imposes a territorial limitation on where the sexual offenses took place. However, Goshen recognized the settled rule of statutory interpretation, that unless expressly stated otherwise, "no legislation is presumed to be intended to operate outside the territorial jurisdiction of the state . . . enacting it" (Goshen v Mutual Life Ins. Co. of N.Y., 286 AD2d at 230 [internal quotation marks omitted]).
Accordingly, under the circumstances of this case, CPLR 214-g does not apply extraterritorially, where the plaintiff is a nonresident, and the alleged acts of sexual abuse were perpetrated by a nonresident outside of New York.
Interplay Between CPLR 214-g and CPLR 202, New York's Borrowing Statute
Background of CPLR 202
CPLR 202, New York's borrowing statute, provides:
"An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply."
This statute, which "has remained substantially unchanged since 1902" (Global Fin. Corp. v Triarc Corp., 93 NY2d 525, 528), is part of New York's procedural law (see 2138747 [*6]Ontario, Inc. v Samsung C & T Corp., 31 NY3d 372, 378). "When a nonresident sues on a cause of action accruing outside New York, CPLR 202 requires the cause of action to be timely under the limitation[s] periods of both New York and the jurisdiction where the cause of action accrued" (Global Fin. Corp. v Triarc Corp., 93 NY2d at 528; see 2138747 Ontario, Inc. v Samsung C & T Corp., 31 NY3d at 377).
One of the underlying purposes of CPLR 202 is "to prevent forum shopping by nonresident plaintiffs who come to New York, seeking to take advantage of a more favorable statute of limitations than that which is available to them elsewhere" (2138747 Ontario, Inc. v Samsung C & T Corp., 144 AD3d 122, 125, affd 31 NY3d 372; see Deutsche Bank Natl. Trust Co. v Barclays Bank PLC, 34 NY3d 327, 337) "and to afford New York defendants the benefit of the shortest possible Statute of Limitations" (Besser v Squibb & Sons, 146 AD2d at 115). Another recognized purpose of the statute is "to add clarity to the law and to provide the certainty of uniform application to litigants" (Deutsche Bank Natl. Trust Co. v Barclays Bank PLC, 34 NY3d at 336 [internal quotation marks omitted]; see 2138747 Ontario, Inc. v Samsung C & T Corp., 31 NY3d at 381).
Application of CPLR 202 to the Plaintiff's Cause of Action
Here, it is undisputed that the plaintiff is not a resident of New York. Moreover, inasmuch as the injuries allegedly suffered by the plaintiff occurred in Florida in 1983-1984, the time and place of the alleged sex abuse perpetrated on the plaintiff by Father Authenreith, the plaintiff's cause of action, brought under CPLR 214-g, against the defendant, accrued in Florida in 1983-1984 (see Global Fin. Corp. v Triarc Corp., 93 NY2d at 529 [the Court of Appeals has "consistently employed the traditional definition of accrual—a cause of action accrues at the time and in the place of injury—in tort cases involving the interpretation of CPLR 202"]). Further, under the applicable Florida statute of limitations, the plaintiff's action is time-barred (see Fla Stat § 95.11[3][a]). Therefore, under these circumstances the borrowing statute would apply, and since the plaintiff's action is time-barred in Florida, it would also be time-barred in New York, unless, as argued by the plaintiff, CPLR 214-g precludes the application of CPLR 202. Accordingly, the question that remains for us to determine is whether, in this case, CPLR 214-g precludes the application of CPLR 202. We answer that question in the negative. Therefore, even if CPLR 214-g applied extraterritorially, the plaintiff's action would be dismissed as time-barred pursuant to CPLR 202.
CPLR 214-g Does not Preclude the Application of CPLR 202 to the Plaintiff's Action
Application of Besser v Squibb & Sons
Contrary to the plaintiff's contention, the plain language of the revival statute, CPLR 214-g, specifically the introductory phrase, "[n]otwithstanding any provision of law which imposes a . . . limitation to the contrary," does not preclude the application of the borrowing statute, CPLR 202. In Besser v Squibb & Sons (146 AD2d 107), the Appellate Division, First Department, rejected a similar argument that was made with regard to the 1986 Toxic Tort Revival Statute that began with the words "[n]otwithstanding any other provision of law" (id. at 116 [internal quotation marks omitted]). The First Department's analysis in Besser is instructive.
In Besser, the First Department addressed the interplay between the borrowing statute and the 1986 Toxic Tort Revival Statute that revived time-barred causes of action arising out of exposure to diethylstilbestrol and other toxic substances (see id. at 110). The Toxic Tort Revival Statute was enacted as part of a tort reform package which included "the elimination of New York's 'last exposure' rule and the adoption of a 'discovery' Statute of Limitations" set forth in CPLR 214-c (id. at 111). "The new Statute of Limitations provide[d] that a personal injury claim arising out of the latent effects of exposure to any substance or combination of substances accrues on the earlier of the date of discovery of the injury by the plaintiff or from the date when through the exercise of reasonable diligence the injury should have been discovered" (id. [internal quotation marks omitted]; see CPLR 214-c[2]). "[T]he revival statute provided a one-year window period to sue for persons who were or would have been barred by operation of the preexisting last exposure rule" (Besser v Squibb & Sons, 146 AD2d at 112).
The First Department reviewed the legislative history of the revival statute and noted that in furtherance of the intention of the 1986 tort reform legislation, the purpose of the revival statute was to "relieve the harsh results of New York's exposure-based Statute of Limitations, which, . . . might have expired before the injured party even knew of his [or her] injuries" (id. at 115). Moreover, the First Department noted that "the New York Legislature would not have an interest in reviving the claims of nonresident plaintiffs" who were from states where the statute of limitations [*7]began to run upon discovery of the injury (id.). The First Department found that the purpose of the enactment of the revival statute was "merely to remove the obstacle of the last exposure rule, not to repeal the salutary purposes underlying the borrowing statute," which include, inter alia, the prevention of forum shopping by nonresident plaintiffs and affording New York defendants the benefit of the shortest limitation period (id. at 114); thus the policies underlying the two statutes could be harmonized (see id. at 115). Applying principles of statutory construction, the First Department concluded that "in the absence of some manifestation of intention by the Legislature to limit the borrowing statute, the revival statute should not be interpreted to override its provisions" (id. at 114).
Further, in considering the underlying purpose of the revival statute, the First Department concluded that "the introductory phrase of the revival statute ['[n]otwithstanding any other provision of law'] can only mean that the CPLR's three-year limitations period on personal injury actions [found in CPLR 214] shall not apply to claims brought within the revival period" (id. at 116). In reaching this conclusion, the First Department relied on In re Agent Orange Prod. Liab. Litig. (597 F Supp 740), wherein the United States District Court for the Eastern District of New York determined that the borrowing statute was applicable to CPLR 214-b, a statute that contains a substantially similar introductory phrase as that contained in the 1986 revival statute. CPLR 214-b provides that certain actions brought by veterans of the Vietnam War arising out of exposure to Agent Orange are governed by a discovery rule (see id.; Besser v Squibb & Sons, 146 AD2d at 116). The District Court found that, "[w]hile the introductory clause of the statute, CPLR 214-b, states: 'Notwithstanding any provision of law to the contrary,' the reference appears to have been intended to avoid application of CPLR 214, the three-year statute for personal injury cases, to New York veterans. It does not suggest that CPLR 202 is inapplicable" (In re Agent Orange Prod. Liab. Litig., 597 F Supp at 803-804; see Besser v Squibb & Sons, 146 AD2d at 116). The District Court referred to the practice commentary for CPLR 214-b, which stated that even if a nonresident plaintiff were covered under the statute, "a nonresident plaintiff . . . would also have to deal with the additional hurdle of CPLR § 202, the borrowing statute" (see In re Agent Orange Prod. Liab. Litig., 597 F Supp at 804, citing McLaughlin, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR 214-b at 198 [1983 ed]; Besser v Squibb & Sons, 146 AD2d at 116).
The plaintiff urges that the conclusion reached in Besser is not applicable to the instant matter. He points to the difference in the plain language in the introductory clause in CPLR 214-g, the CVA revival statute, which states "[n]otwithstanding any provision of law which imposes a period of limitation to the contrary" (emphasis added), and the introductory clause in the 1986 toxic tort revival statute at issue in Besser, which states: "[n]otwithstanding any other provision of law." The plaintiff argues that the language in CPLR 214-g expressly manifests the Legislature's intent to exclude the application of CPLR 202. We do not find this argument to be persuasive.
The plaintiff contends that CPLR 202, as part of New York's procedural law, is a statute of limitations in its own right, and therefore, it is precluded by the introductory clause of CPLR 214-g, which states, "[n]otwithstanding any provision of law which imposes a period of limitation to the contrary." This contention is without merit. While CPLR 202 is part of New York's procedural law, and part of CPLR article 2, it is unlike the other statutes of limitations set forth in article 2. CPLR 202 is not a statute of limitations associated with any particular cause of action, but rather "calls for a comparison of New York's 'net' limitations period . . . and the foreign state's 'net' limitations period," the shorter of which will be applied to determine the timeliness of an action (Deutsche Bank Natl. Trust Co. v Barclays Bank PLC, 34 NY3d at 339). Hence, it is a comparative statute.
As previously discussed, the intent of the CVA as expressed in its legislative history is to provide New York survivors of child sexual abuse an avenue to seek justice for the abuse they suffered by extending New York's restrictive statutes of limitations, recognizing the justifiable delay often associated with coming to terms with and reporting such abuse. As part of the CVA, the revival statute, CPLR 214-g, originally provided a one-year window to bring certain civil claims to recover damages for past child sexual abuse which were time-barred. As set forth hereinabove, the purposes of CPLR 202 include preventing forum shopping (see Deutsche Bank Natl. Trust Co. v Barclays Bank PLC, 34 NY3d at 337; 2138747 Ontario, Inc. v Samsung C & T Corp., 144 AD3d at 125), affording "New York defendants the benefit of the shortest possible Statute of Limitations" (Besser v Squibb & Sons, 146 AD2d at 115), and adding "clarity to the law and [providing] the certainty of uniform application to litigants" (Deutsche Bank Natl. Trust Co. v Barclays Bank PLC, [*8]34 NY3d at 336 [internal quotation marks omitted]; see 2138747 Ontario, Inc. v Samsung C & T Corp., 31 NY3d at 381). The purpose of the CVA revival statute, as with the toxic tort revival statute at issue in Besser, does not run afoul of the purposes of CPLR 202, and the two statutes can be reconciled. The fact that CPLR 202 will prevent some nonresident plaintiffs from pursuing their actions does not lead to the conclusion that CPLR 214-g precludes the application of CPLR 202. "Nothing in the revival statute or its legislative history suggests that the statute was intended to create a national safe harbor for second chance litigation by otherwise time-barred claimants" (Besser v Squibb & Sons, 146 AD2d at 117). Thus, we conclude that, analogous to Besser and Agent Orange, the plain language of the introductory clause in CPLR 214-g, the CVA revival statute, which states "[n]otwithstanding any provision of law which imposes a period of limitation to the contrary" (emphasis added), is meant to avoid the statute of limitations that would have ordinarily been applicable to the cause of action at issue; i.e., here, the three year period of limitations applicable to the plaintiff's negligence cause of action as set forth in CPLR 214. Moreover, as previously set forth, as a revival statute, CPLR 214-g must be narrowly construed (see Hopkins v Lincoln Trust Co., 233 NY at 215; Besser v Squibb & Sons, 146 AD2d at 115). Further, there is no reference to CPLR 202 in CPLR 214-g, nor is there any indication that CPLR 214-g was intended to override the provisions of CPLR 202; "in the absence of some manifestation of intention by the Legislature to limit the borrowing statute, the revival statute should not be interpreted to override its provisions" (Besser v Squibb & Sons, 146 AD2d at 114). Notably, in the wake of Besser, when enacting the CVA so many years later, if such were the intent, the Legislature could have indicated that the borrowing statute would not apply to CPLR 214-g and/or any other provisions of the CVA; yet no such provision was made.
The plaintiff's remaining contentions are without merit or need not be reached in light of our determination.
Therefore, the Supreme Court properly granted the defendant's motion pursuant to CPLR 3211(a) to dismiss the amended complaint as time-barred. The defendant established that CPLR 214-g, the CVA revival statute, does not override the application of CPLR 202, and therefore, the plaintiff's negligence cause of action is time-barred under the applicable Florida statute of limitations (see Deutsche Bank Natl. Trust Co. v Blank, 189 AD3d 1678, 1682). In opposition, the plaintiff failed to raise a triable issue of fact.
Accordingly, the order is affirmed.
DILLON, J.P., WOOTEN and DOWLING, JJ., concur.
ORDERED the order is affirmed, with costs.
ENTER:
Maria T. Fasulo
Clerk of the Court

Footnotes

Footnote 1: In 2020 the Legislature extended the window to two years (see L 2020, ch 130, § 1).