Vision Biobanc Holdings LLC v Taller
2026 NY Slip Op 03901
June 18, 2026
Appellate Division, First Department
Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.
This decision is uncorrected and subject to revision before publication in the Official Reports.

Vision Biobanc Holdings LLC etc., Plaintiff-Respondent,
v
Derek R. Taller et al., Defendants, David Lessen, Defendant-Appellant.

Decided and Entered: June 18, 2026
Index No. 651706/24|Appeal No. 6912|Case No. 2026-01330|
Before: Manzanet-Daniels, J.P., Mendez, Shulman, Higgitt, Hagler, JJ.

Michael A. Scotto, Garden City, for appellant.
Klehr Harrison Harvey Branzburg LLP, New York (William C. Katz of the bar of the State of New Jersey and Commonwealth of Pennsylvania, admitted pro hac vice, of counsel), for respondent.

[*1]
Order, Supreme Court, New York County (Anar Rathod Patel, J.), entered on or about March 16, 2026, which, insofar as appealed from, denied defendant David Lessen's motion to dismiss as to the first, second, and seventh causes of action in the amended complaint for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and aiding and abetting fraud, unanimously modified, on the law, to grant the motion to dismiss the second cause of action for aiding and abetting breach of fiduciary duty, and otherwise affirmed, without costs.
Plaintiff stated a valid claim against Lessen for aiding and abetting fraud (see AIG Fin. Prods. Corp. v ICP Asset Mgt., LLC, 108 AD3d 444, 446 [1st Dept 2013]) based on the following allegedly false statements in the January 2020 Private Placement Memorandum (PPM): (1) that plaintiff had a board of directors in place that would provide oversight and that initially consisted of Lessen, defendant Derek R. Taller, and nonparties Ronald Silver, FranÇoise Birnholz and Patricia Barron; (2) that plaintiff had an audit committee (composed of Silver, Barron and Lessen); and (3) that plaintiff had retained "one of the big four auditing firms" — namely, PricewaterhouseCoopers.
Plaintiff sufficiently alleged that these statements were false. They are not forward-looking statements covered by the PPM's disclaimer, as they are styled as statements of present fact. The amended complaint alleged that Silver, Birnholz, and Barron were not aware that they had been named to the board (let alone the audit committee) and never participated in a board meeting, and that there was no functioning board or audit committee at the time of the January 2020 PPM, as corroborated by the revision in the November 2020 PPM that the board had not yet been "activat[ed]." It further alleged that plaintiff had not engaged an auditor (let alone a big four auditor) at the time of the January 2020 PPM and that its financial statements were never audited, as corroborated by the revision in the August 2020 PPM that plaintiff was still "in the process" of engaging an auditor.
Plaintiff also sufficiently alleged that Lessen had actual knowledge that these statements were false — notwithstanding that some (but not all) of these allegations were made "[u]pon information and belief" (see Board of Mgrs. of 45 E. 22nd St. Condominium v 45 E. 22nd St. Prop. LLC, 246 AD3d 655, 656 [1st Dept 2026]). The allegations regarding Lessen's positions as plaintiff's cofounder, CFO, COO, board member, and audit committee member (which are supported by Lessen's own allegations in a separate action), are sufficient to raise an inference that Lessen knew the true facts regarding the membership and functioning of plaintiff's board and its committees. None of the circumstances cited by Lessen are sufficient to conclusively refute plaintiff's allegations of actual knowledge or to conclusively establish that Lessen justifiably believed the subject statements to be true.
[*2]
Plaintiff sufficiently alleged that Lessen substantially assisted in the publication of the allegedly false statements. Although not the primary author of the January 2020 PPM, plaintiff's allegations regarding Lessen's positions with plaintiff, including his role in developing marketing materials, as well as specific allegations that Lessen had "input into the PPM," are sufficient to raise an inference that Lessen at least approved the publication of these statements in the PPM.
Plaintiff also sufficiently alleged that investors justifiably relied on the statements in the January 2020 PPM when they decided to purchase plaintiff's securities between the issuance of the January 2020 PPM and the issuance of the August and November 2020 PPMs, which corrected the allegedly false statements therein.
We also find that plaintiff sufficiently alleged loss causation, notwithstanding that the actual losses did not materialize immediately when the allegedly false statements were made but manifested after Taller's later misconduct. Plaintiff's allegations were sufficient to permit an inference that the allegedly false statements enabled such misconduct insofar as they masked the fact that Taller's authority at plaintiff was essentially unchecked by the normal mechanisms of corporate governance. Plaintiff's allegations thus permit an inference that it was foreseeable that plaintiff's investors would suffer losses as a result of relying on the alleged misrepresentations (see MBIA Ins. Corp. v Countrywide Home Loans, Inc., 87 AD3d 287, 296 [1st Dept 2011]).
It is immaterial that Taller's misconduct occurred after Lessen's purported resignation in May 2020. It is not clear that Lessen actually resigned in May 2020 — at least from his position on plaintiff's board of directors. Even assuming he did, his actions prior to his resignation could still have caused losses afterwards (cf. BelCom, Inc. v Robb, 1998 WL 229527, *3, 1998 Del Ch LEXIS 58, *9 [Del Ch, Apr. 28, 1998, No. Civ A 14663], affd 725 A2d 443 [Del 1999]).
Plaintiff also stated a valid claim for breach of fiduciary duty. It is undisputed that Lessen owed fiduciary duties to plaintiff during his tenure as a director and officer of the company, and plaintiff has sufficiently alleged that Lessen breached this duty by drafting or approving the false statements in the January 2020 PPM and Form D, as well as through his failure to implement controls insofar as he knowingly allowed plaintiff to operate without a functioning board, audit committee or outside auditor.
[*3]
However, an aiding and abetting breach of fiduciary duty claim cannot lie against an individual who himself is a fiduciary (see e.g. Caspian Select Credit Master Fund Ltd. v Gohl , 2015 WL 5718592, 2015 Del Ch LEXIS 246 [Del Ch, Sept. 28, 2015, CA No. 10244-VCN]; see also Tekiner v Bremen House Inc., 2022 NY Slip Op 33682[U]). While there are some factual issues surrounding the date of Lessen's resignation, there are no allegations that he participated in any misconduct outside of his roles as director and officer of the company. Thus, the aiding and abetting a breach of fiduciary duty claim against Lessen must be dismissed.
Finally, Supreme Court properly declined to dismiss the breach of fiduciary duty claim against Lessen as time-barred at this stage of the litigation. New York law applies to this procedural issue (see Portfolio Recovery Assoc., LLC v King, 14 NY3d 410, 416 [2010]), and New York's borrowing statute, enacted to prevent forum shopping, "is an abiding part of New York's procedural law" (CPLR 202; see 2138747 Ontario, Inc. v Samsung C&T Corp., 31 NY3d 372, 378 [2018]).
The borrowing statute provides that if a nonresident sues on a cause of action accruing outside of New York, then the claim must be timely under the limitations period of both New York and the jurisdiction where the cause of action accrued (Global Fin. Corp. v Triarc Corp., 93 NY2d 525, 528 [1999]; see also IKB Intl., S.A. v Wells Fargo Bank, N.A., 222 AD3d 454 [1st Dept 2023]). Thus, only if plaintiff is a resident of Puerto Rico and the cause of action accrued in Puerto Rico will the shorter three-year Puerto Rico statute of limitations apply (see 32 PR Law Ann tit 32, § 261; Segarra-Miranda v Perez Padro, 482 BR 59, 70 [Dist Court, D Puerto Rico 2012]).
"When an alleged injury is purely economic, the place of injury usually is where the plaintiff resides and sustains the economic impact of the loss," which "in the case of a corporate plaintiff, . . . may be the state of incorporation or its principal place of business" (Oxbow Calcining USA Inc v American Indus. Partners, 96 AD3d 646, 651 [1st Dept 2012]). There may also be situations where a company's headquarters is the proxy for determining its residency (Hertz Corp. v Friend, 559 US 77, 92-93 [2010]).
Accepting the allegations in the amended complaint as true, and affording plaintiff the benefit of every favorable inference, we are unable to determine plaintiff's residency at this stage of the litigation. Plaintiff alleges in its amended complaint that, while it was incorporated in Puerto Rico and has its technical principal place of business there, it actually operated the company in New York from its headquarters in midtown Manhattan. Notably, the amended complaint contains no allegations that plaintiff operated outside this jurisdiction. Further, Lessen has since admitted in his amended answer that plaintiff operated out of its New York headquarters.
[*4]
Thus, as in Oxbow, "[a]ny ruling on whether the borrowing statute applies would require a factual determination as to the principal residence of [the plaintiff] and its subsidiaries, which is inappropriate on [a] motion to dismiss" (id. at 651). The parties are thus directed to engage in discovery to determine the actual place of the plaintiff's residence for the purpose of determining whether the borrowing statute applies (id.)
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: June 18, 2026